UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X
Shui W. Kwong, et al.,                         :        Civil Action Number:
                                               :        11 cv 2356
                   Plaintiffs,                 :
                                               :        (Hon. John G. Koeltl)
           -against-                           :
                                               :
Michael Bloomberg, et al.,                     :
                                               :
                   Defendants.                 :
--------------------------------------------------X


**MEMORANDUM OF LAW BY INTERVENOR NEW YORK ATTORNEY
GENERAL ERIC T. SCHNEIDERMAN IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
INTERVENOR'S  CROSS-MOTION FOR SUMMARY JUDGMENT.**

ERIC T. SCHNEIDERMAN
Attorney General of the
 State of New York
Intervenor
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8553

MONICA CONNELL
ANTHONY J. TOMARI
Assistant Attorneys General
MATTHEW LEVY
Legal Assistant
Of Counsel

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

Preliminary Statement ........................................................................................................ 1

STATEMENT OF FACTS ................................................................................................... 2

    A.  Relevant Legal Background ...................................................................................... 2

        1.  Heller and McDonald and The Contours of the Second
            Amendment Right ............................................................................................. 2

            a.    The Right Established in Heller ........................................................... 2

            b.    McDonald Renders the Right Recognized in Heller Applicable
                to the States ........................................................................................... 4

            c.    Post-Heller Constitutional Challenges ................................................. 4

        2.    Penal Law 400.00 - New York's Gun Licensing Statute ................................... 6

        3.    Relevant Legislative History of Penal Law § 400.00(14) ................................. 7

    B.  The Instant Action .................................................................................................. 9

ARGUMENT ....................................................................................................................... 9

    A.  Standards For Summary Judgment ......................................................................... 9

POINT I   - PLAINTIFFS' CLAIMS REGARDING PENAL LAW § 400.00 (14)
              ARE NOT JUSTICIABLE ....................................................................... 10

    A.  Plaintiffs' As-Applied Challenge to Penal Law § 400.00(14) Should Be
        Dismissed as There is No Live Case or Controversy ............................................ 10

    B.  Plaintiffs SAF and NYRPA Lack Standing to Prosecute this As-Applied
        Challenge ................................................................................................................ 12

        1.    Each Plaintiffs' Standing Implicates the Jurisdiction of this Court and
            Must Be Resolved as Threshold Matter ........................................................ 12

        2.    SAF and NYRPA Lack Standing to Prosecute this Action ............................. 13

a. The Organizations Cannot Establish Direct Standing......................14

b. The Organizations Cannot Establish Associational Standing.........14

POINT II     - PENAL LAW § 400.00(14) COMPORTS WITH THE
FOURTEENTH AMENDMENT ...............................................................15

A.   Plaintiffs' Equal Protection Claim Fails Because  § 400.00(14) Does Not
Unconstitutionally Burden Plaintiffs' Second Amendment Rights....................16

B.   Plaintiffs' Equal Protection Claim Fails Because Plaintiffs Are Not
Similarly Situated to Persons in Other Parts of New York................................19

POINT III -  BECAUSE PENAL LAW § 400.00(14) REGULATES BUT DOES NOT
BURDEN PLAINTIFFS' SECOND AMENDMENT RIGHT, STRICT
SCRUTINY IS INAPPLICABLE HERE ..................................................22

A.  Penal Law § 400.00(14) Does Not Permit  Localities to
Impose Unlimited Fees and Thus Does Not Severely Burden Plaintiffs'
Core Second Amendment Right .......................................................................23

B.  Plaintiffs' Reliance on Illinois State Board of Elections for the Proposition
that Strict Scrutiny Applies Here is Misplaced.................................................25

C.  Plaintiffs' Reliance Upon First Amendment Jurisprudence Fails to Support
Their Argument for the Application of Strict Scrutiny......................................26

1. The Direct Application of First Amendment Jurisprudence in the
Second Amendment Context Has Been Rejected........................................26

2. Even Under First Amendment Analysis, Strict Scrutiny is
Inapplicable Here ........................................................................................29

POINT IV -   EVEN IF PENAL LAW § 400.00(14) WERE DEEMED TO BURDEN
PLAINTIFFS' SECOND AMENDMENT RIGHT, THE CHALLENGE
WOULD FAIL BECAUSE THE STATUTE CAN WITHSTAND
INTERMEDIATE SCRUTINY ...............................................................30

CONCLUSION.....................................................................................................35

# TABLE OF AUTHORITIES

**Cases**                                                                    Page

729, Inc. v. Kenton Cnty. Fiscal Court,
  402 Fed. Appx. 131 (6th Cir. 2010) ............................................................. 24

Affronti v. Crosson,
  95 N.Y.2d 713 (2001), cert. denied, 534 U.S. 826 (2001) ............................ 18

Aguayo v. Richardson,
  473 F.2d 1090 (2d Cir.1973), cert. denied, 414 U.S. 1146 (1974) ................ 15

Anderson v. Celebrezze,
  460 U.S. 780 (1983) ........................................................................................ 26

Anderson v. Liberty Lobby Inc.,
  477 U.S. 242 (1986) ........................................................................................ 10

ATM One L.L.C. v. Vill. of Freeport,
  276 A.D.2d 573 (2d Dep't 2000) ..................................................................... 23

Babbitt v. United Farm Workers Nat. Union,
  442 U.S. 289 (1979) ........................................................................................ 10

Bach v. Pataki,
  289 F. Supp.2d 217 (N.D.N.Y. 2003), aff'd 408 F.3d 75 (2d Cir. 2005),
  cert. denied, 546 U.S. 1174 (2006) ...................................................... 16, 19, 22

Bon Air Estates, Inc. v. Vill. of Suffern,
  32 A.D.2d 921 (2d Dep't 1969) ....................................................................... 23

Burdick v. Takushi,
  504 U.S. 428 (1992) ........................................................................................ 26

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) .......................................................................................... 9

City of Cleburne v. Cleburne Living Ctr.,
  473 U.S. 432 (1985) ................................................................................... 16, 21

City of Los Angeles v. Lyons,
  461 U.S. 95 (1983) ............................................................................... 10, 12, 13

Clark v. Jeter,
  486 U.S. 456 (1988) ........................................................................................ 31

Clingman v. Beaver,
    544 U.S. 581 (2005)...........................................................................25

Com. v. Lee,
    2011 WL 710997 (Mass. Super. 2011) ..................................................17

Cox v. New Hampshire,
    312 U.S. 569 (1941)...........................................................................24

Crawford v. Marion Cnty. Election Bd.,
    533 U.S. 181 (2008)...........................................................................26

Dearth v. Holder,
    641 F.3d 499 (D.C. Cir. 2011) ............................................................14

District of Columbia v. Heller,
    554 U.S. 570 (2008)..................................................................... passim

Fla. E. Coast Ry. v. Martinez,
    761 F.Supp. 782 (M.D. Fla. 1991).......................................................11

Forsyth Cnty. v. Nationalist Movement,
    505 U.S. 123 (1992)...........................................................................24

Friends of the Earth, Inc. v. Laidlaw Env. Servs.,
    528 U.S. 167 (2000)...........................................................................13

Gannett Co. v. DePasquale,
    443 U.S. 368 (1979)...........................................................................28

Gannett Satellite Info. Network, Inc. v. Metro. Transp. Auth.,
    745 F.2d 767 (2d Cir. 1984)...............................................................24

Gonzales v. Carhart,
    550 U.S. 124 (2007)...........................................................................17

Harris v. Bush,
    106 F.Supp.2d 1272 (N.D. Fla. 2000)..................................................12

Harris v. McRae,
    448 U.S. 297 (1980)...........................................................................17

Heller v. District of Columbia ("Heller II"),
    698 F.Supp.2d 179 (D. D.C. 2010)................................................ passim

Hotel Emps. & Rest. Emps. Union v. N.Y. Dep't of Parks & Rec.,
   311 F.3d 534 (2d Cir. 2002)........................................................................ 10

Hunt v. Wash. State Apple Adver. Comm'n,
   432 U.S. 333 (1977)..................................................................................... 14

Illinois State Bd. of Elections v. Socialist Workers Party,
   440 U.S. 173 (1979)......................................................................... 22, 25, 26

Justice v. Town of Cicero,
   577 F.3d 768 (7th Cir.2009), cert. den'd, 130 S.Ct. 3410 (2010) ................... 6

Kail v. Rockefeller,
   275 F.Supp. 937 (E.D.N.Y.1967) ................................................................ 20

League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors,
   737 F.2d 155 (2d Cir.1984).......................................................................... 15

Lederman v. N.Y. Police Dep't,
   2011 WL 1343558 (Sup. Ct. N.Y.Co. 2011) ............................................... 34

Lewis v. Casey,
   518 U.S. 343 (1996)..................................................................................... 14

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992).............................................................................. 13, 14

Mack v. U.S.,
   6 A.3d 1224 (D.C. 2010) .............................................................................. 4

Mahoney v. Lewis,
   199 A.D.2d 734 (3d Dep't 1993).................................................................. 34

U.S. v. Marzzarella, 614 F.3d 85 (3d Cir. 2010) ................................ 3, 5, 6, 26, 29, 30, 31

Mastrovincenzo v. City of New York,
   435 F.3d 78 (2d Cir. 2006).......................................................................... 24

McDonald v. City of Chicago, Ill.,
   _U.S._, 130 S.Ct. 3020 (2010).................................................... 4, 16, 17, 18

McGowan v. Maryland,
   366 U.S. 420 (1961)..................................................................................... 20

v

Md. Cas. Co. v. Pac. Coal & Oil Co.,
    312 U.S. 270 (1941)....................................................................................... 10

Mental Disability Law Clinic v. Hogan,
    2008 WL 4104460 (E.D.N.Y. 2008)........................................................... 13

Missouri v. Lewis,
    101 U.S. 22 (1879)....................................................................................... 20

Montserrate v. N.Y. State Senate,
    599 F.3d 148 (2d Cir. 2010).......................................................................... 26

Murdock v. Pennsylvania,
    319 U.S. 105 (1943)..................................................................................... 24

N.R.A. v. City of Philadelphia,
    977 A.2d 78 (Pa.Commw. Ct. 2009), app. denied, 996 A.2d 1068 (Pa. 2010) ............ 15

N.R.A. v. City of Pittsburgh,
    999 A.2d 1256 (Pa.Commw. Ct. 2010) ...................................................... 15

N.R.A. v. Magaw,
    132 F.3d 272 (6th Cir. 1997) ...................................................................... 15

N.Y. Pub. Interest Research Grp. v. Whitman,
    321 F.3d 316 (2d Cir. 2003)........................................................................ 12

Ne. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville,
    508 U.S. 656 (1993)..................................................................................... 12

Ne. Ohio Coal. for the Homeless v. City of Cleveland,
    105 F.3d 1107 (6th Cir. 1997) .................................................................... 24

Nordlinger v. Hahn,
    505 U.S. 1 (1992)........................................................................... 17, 18, 19

Nordyke v. King,
    2011 WL 1632063 (9th Cir. May 2, 2011) ............................... 17, 18, 19, 25, 28, 30, 35

Nnebe v. Daus,
    2011 WL 2149924 (2d Cir. May 31, 2011) ................................................ 15

O & G Indus., Inc. v. Nat'l R.R. Passenger Corp.,
    537 F.3d 153 (2d Cir. 2008), cert. denied, 129 S.Ct. 2043 (2009) ................................ 9

Ocampo v. U.S.,
    234 U.S. 91 (1914)...................................................................................... 20

O'Connor v. Scarpino,
    83 N.Y.2d 919 (1994) ................................................................................. 6

Osterweil v. Bartlett,
    2011 WL 1983340 (N.D.N.Y. May 20, 2011)................................... 3, 22, 30, 31, 33, 34

People v. Dawson,
    934 N.E.2d 598 (Ill. App. Ct. 2010) ............................................................. 3

People v. Delacy,
    192 Cal.App.4th 1481 (Cal. Ct. App. 2011) ............................................. 6, 19

People v. Hughes,
    83 A.D.3d 960 (2d Dep't  2011).................................................................. 19

People v. Kuri,
    132 Misc.2d 1036 (N.Y. City Crim. Ct. 1986) ....................................... 20, 21

People v. Perkins,
    62 A.D.3d 1160 (3d Dep't 2009), app. denied 13 N.Y.3d 748 (2009)................ 4, 17, 18

People v. Richter,
    206 Misc. 304 (N.Y. Sp. Sess. 1954)........................................................... 20

Peruta v. San Diego,
    758 F.Supp.2d 1106 (S.D. Cal. 2010).............................................. 3, 5, 21, 22, 31, 32

Peterson v. LaCabe,
    2011 WL 843909  (D. Colo. March 8, 2011)................................... 22, 33, 35

Phillips v. Clifton Park Water Auth.,
    286 A.D.2d 834 (3d Dep't 2001), app. denied, 769 N.E.2d 353 (N.Y. 2002) .............. 23

Planned Parenthood of Se. Pa. v. Casey,
    505 U.S. 833 (1992)...................................................................................... 17

Price v. N.Y. State Bd. of Elections,
    540 F.3d 101 (2d Cir. 2008).......................................................................... 26

Richards v. Cnty. of Yolo,
    2011 WL 1885641 (E.D. Cal. 2011)............................................................. 19

Riddick v. U.S.,
   995 A.2d 212 (D.C. 2010) ........................................................................ 4

Russman v. Board of Educ. of Enlarged City Sch. Dist. of City of Watervliet,
   260 F.3d 114 (2d Cir. 2001)..................................................................... 10

Ruston v. Town of Skaneateles,
   610 F.3d 55 (2d Cir. 2010), cert. denied, 131 S.Ct. 824 (2010) ................... 19

Salsburg v. Maryland.,
   346 U.S. 545 (1954)........................................................................... 20, 23

Sanger v. Reno,
   966 F.Supp. 151 (E.D.N.Y. 1997) ....................................................... 10, 12

Schall v. Martin,
   467 U.S. 253 (1984)................................................................................ 31

Schenck v. Pro-Choice Network of W. N.Y.,
   519 U.S. 357 (1997)................................................................................ 27

Shugart v. Chapman,
   366 F. App'x 4 (11th Cir. 2010) .............................................................. 26

Shuttlesworth v. City of Birmingham, Ala.,
   394 U.S. 147 (1969)................................................................................ 27

State v. Knight,
   241 P.3d 120 (Kan. Ct. App. 2010) ........................................................... 4

Stonewall Union v. City of Columbus,
   931 F.2d 1130 (6th Cir. 1991) ................................................................. 24

Suffolk Cnty. Builders Ass'n v. Suffolk Cnty.,
   46 N.Y.2d 613 (1979)............................................................................. 23

Summers v. Earth Island Inst.,
   129 S.Ct. 1142...................................................................................... 15

Tillim v. Vill. of Hunter,
   2009 WL 3456321 (Sup. Ct. 2009)............................................................ 23

Timmons v. Twin Cities Area New Party,
   520 U.S. 351 (1997)................................................................................ 26

Tolub v. Evans,
   58 N.Y.2d 1 (1982) .............................................................................. 20

Torsoe Bros. Constr. Corp. v. Bd. of Trs. of Vill. of Monroe,
   49 A.D.2d 461 (2d Dep't 1975)............................................................ 23

Town of Somers v. Camarco,
   308 N.Y. 537 (1955) ........................................................................... 20

Turley v. Police Dep't of New York,
   167 F.3d 757 (2d Cir. 1999)................................................................ 24

U.S. v. Cavera,
   550 F.3d 180 (2d Cir. 2008), cert. denied, 129 S.Ct. 2735 (2009) ............................. 20

U.S. v. Chester,
   628 F.3d.673 (4th Cir. 2010) ........................................... 3, 6, 26, 29, 30, 31

U.S. v. Donovan,
   410 Fed.Appx. 979 (7th Cir. 2011).................................................... 33

U.S. v. Elkins,
   2011 WL 1637618 (W.D. Va. May 2, 2011) ....................................... 6

U.S. v. Hall,
   2008 WL 3097558 (S.D. W.Va. Aug. 4, 2008), aff'd 337 Fed.Appx. 340 (4th Cir.
   2009), cert. denied, 130 S.Ct. 774 (2009) ........................................... 3

U.S. v. Marzzarella,
   614 F.3d 85 (3d Cir. 2010)............................................. 3, 5, 6, 26, 29, 30, 31

U.S. v. Masciandro,
   648 F.Supp.2d 779 (E.D. Va. 2009), aff'd, 638 F.3d 458 (4th Cir. 2011) .......... 4, 31, 32

U.S. v. Miller,
   604 F. Supp. 2d 1162 (W.D. Tenn. 2009)............................................. 6, 30

U.S. v. Pettengill,
   682 F.Supp. 2d 49 (D. Me. 2010) ....................................................... 6

U.S. v. Quattrone,
   402 F.3d 304 (2d Cir. 2005)............................................................... 28

U.S. v. Radencich,
   2009 WL 127648 (N.D. Ind. Jan. 20, 2009) ....................................... 6

U.S. v. Reese,
   627 F.3d 792 (10th Cir. 2010), cert. denied, 131 S.Ct. 2476 (2011) ...... 6, 19, 29, 30, 31

U.S. v. Seay,
   620 F.3d 919 (8th Cir. 2010), cert. denied, 131 S.Ct. 1027 (2011) .............................. 33

U.S. v. Skoien,
   614 F.3d 638 (7th Cir. 2010), cert. denied,
   131 S.Ct. 1674 (2011) ..................................................................... 3, 5, 6, 27, 31, 32, 33

U.S. v. Tooley,
   717 F.Supp.2d 580 (S.D. W.Va. 2010) ........................................................................ 6

U.S. v. Walker,
   709 F.Supp.2d 460 (E.D. Va. 2010) ................................................................. 5, 6, 30

United States v. Salerno,
   481 U.S. 739 (1987) ......................................................................................... 31

Valley Forge Christian Coll. v. Americans United for Separation of Church and State,
   Inc.,
   454 U.S. 464 (1982) ......................................................................................... 13

Warth v. Seldin,
   422 U.S. 490 (1975) ..................................................................... 12, 13, 14, 15

Weinstock v. Columbia Univ.,
   224 F.3d 33 (2d Cir. 2000), cert. denied, 540 U.S. 811 (2003) ..................................... 16

Williams v. State,
   10 A.3d 1167 (Md. 2011) ........................................................................................... 4

Williams v. State,
   2011 WL 13746 (Md. 2011) ............................................................................. 3, 10, 19

Wilson v. Cook Cnty.,
   943 N.E.2d 768 (Ill. App. Ct. 2011) ..................................................................... 19, 30

Wilson v. Firestone,
   623 F.2d 345 (5th Cir. 1980) ................................................................................ 26

Wollard v. Sheridan,
   2010 WL 5463109 (D. Md. Dec. 29, 2010) ............................................................... 14

**U.S. Constitution**

Article III, § 2, cl. 1 .................................................................................................. 10
First Amendment ............................................................................................... passim
Second Amendment .......................................................................................... passim
Fourteenth Amendment ............................................................................ 1, 4, 15, 35

**Federal Statutes**

28 U.S.C. § 2403(b) ..................................................................................................... 1
42 U.S.C. § 1983 ......................................................................................................... 15

**Federal Rules and Regulations of Civil Procedure ("Fed.R.Civ.P.")**

Rule 56(c)(2) ................................................................................................................ 9

**New York State Statutes**

Agric. & Mkts. Law § 107 ........................................................................................ 20
Penal Law § 265(10) .................................................................................................... 7
Penal Law § 400.00(1) ................................................................................................. 6
Penal Law § 400.00(2)(f) ............................................................................................. 7
Penal Law § 400.00(4) ................................................................................................. 7
Penal Law § 400.00(4-a) .............................................................................................. 7
Penal Law § 400.00(5) ................................................................................................. 7
Penal Law § 400.00(14) ....................................................................................... passim
Veh. & Traf. § 375 ..................................................................................................... 22

**Other State Statutes**

D.C. Mun. Regs. tit. 24, § 2320.1 (West 2011) ...................................................... 18
Haw. Rev. Stat. §§ 134-2(a) ...................................................................................... 18
Md. Code Ann., Crim. Law §4-203(b) (6) ............................................................... 18
Md. Code Ann., Pub. Safety § 5-117 ........................................................................ 18
Mich. Comp. Laws Ann. § 28.422(1) ....................................................................... 18
N.C. Gen. Stat. Ann. § 14-402(a) ............................................................................. 18
N.J. Stat. Ann. § 2C:39-5 .......................................................................................... 18
N.J. Stat. Ann. § 2C:39-6(e) ...................................................................................... 18
N.J. Stat. Ann. § 2C:58-3(a) ...................................................................................... 18
New York City Administrative Code § 10-131 (a) (2) ...................................... passim

**Treatises**

Carlton F.W. Larson, <u>Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit</u>, 60 HASTINGS L.J. 1371 (2009)........................................ 5

David Hemenway, <u>Private Guns, Public Health,</u> 45 (University of Michigan Press 2004) ...................................................................... 31

Dennis A. Henigan, <u>The Heller Paradox</u>, 56 UCLA L. REV. 1171 (2009) ......................... 5

Lawrence Rosenthal, <u>Second Amendment Plumbing After Heller: Of Standards of Scrutiny, Incorporation, Well Regulated Militias, and Criminal Street Gangs,</u> 41 Urb. Law 1 (2009)................................................................................................. 29

Matthew Miller and David Hemenway, <u>Guns and Suicide in the United States</u>, New Eng. J. Med. 2008; 359:989-991, September 4, 2008 .......................................................... 32

Zimring & Hawkins, <u>Crime Is Not the Problem: Lethal Violence in America,</u> Chapters 1, 3 and 7............................................................................................................. 32

Zimring & Hawkins, <u>The Citizen's Guide to Gun Control, New York</u>, at Chapter 5, p. 38.................................................................................................................................... 32

**Preliminary Statement**

Plaintiffs Shui W. Kwong, George Greco, Glenn Herman, Nick Lidakis, Timothy S. Furey, Daniela Greco, Nunzio Calce, the Second Amendment Foundation, Inc. and the New York State Rifle & Pistol Association, Inc. ("Plaintiffs") bring this action asserting that New York State Penal Law § 400.00(14) and New York City Administrative Code § 10-131(a)(2), provisions which relate to the setting of fees for handgun licenses in the State and the City of New York, violate their rights under the Second and Fourteenth Amendments of the United States Constitution. Intervenor Attorney General Eric T. Schneiderman hereby opposes Plaintiffs' motion for summary judgment and cross-moves for summary judgment declaring that Penal Law § 400.00(14) does not violate Plaintiffs' constitutional rights.[1]

Penal Law § 400.00(14) provides that in New York City the City Council and in Nassau County the Board of Supervisors shall fix the fee to be charged for a license to carry or possess a pistol or revolver, and that elsewhere in the state, the legislative body of each county will set a fee for each license to carry or possess a pistol or revolver of not less than three dollars nor more than ten dollars to be collected and paid into the county treasury. Penal Law § 400.00(14) does not itself set fees but permits fees to be established by local legislatures. Plaintiffs do not challenge the requirement of a license for handgun possession nor do they assert that no fee can be charged for such license. Complaint ¶ 8. Instead, Plaintiffs assert an equal protection challenge to § 400.00(14), claiming that the statute treats

---

[1] Pursuant to a Stipulation of Dismissal and Intervention entered on May 23, 2011, the Attorney General was voluntarily dismissed as a defendant and was permitted to intervene to defend the constitutionality of Penal Law § 400.00(14) pursuant to 28 U.S.C. § 2403(b), which provides that where the constitutionality of a state statute is drawn in question, the  attorney general of the State may intervene for presentation of evidence, for argument on the question of constitutionality and shall have the rights of a party.

citizens of different parts of New York in a disparate fashion in violation of the Equal

Protection Clause. See Complaint ¶ 2; Memorandum of Law in Support of Plaintiffs' Motion

for Summary Judgment ("Pls. Mem.") at pp. 18-25.  Plaintiffs further assert that New York

City Administrative Code § 10-131(a) (2), which establishes a $340 fee for residential

handgun licenses in New York City, is "excessive and is not used to defray administrative

costs"  and thus "impermissibly burdens the Second Amendment right to bear arms."

Complaint ¶ 1; Pls. Mem.at pp. 14-18.

As set forth below: (1) this claim is not justiciable because there is no case or

controversy sufficient for Plaintiffs to mount a constitutional challenge to Penal Law §

400.00(14) and Plaintiffs Second Amendment Foundation, Inc. ("SAF") and New York Rifle

& Pistol Association, Inc. ("NYRPA") lack standing to prosecute this action; (2) Penal Law

§ 400.00(14) does not violate Plaintiffs' equal protection rights; (3) § 400.00(14) regulates

but does not burden Plaintiffs' rights and thus strict scrutiny is inapplicable; and (4) if the

Court decides to apply heightened scrutiny here, because the statute survives intermediate

scrutiny, Plaintiffs' challenge fails.

## STATEMENT OF FACTS

A.    **Relevant Legal Background.**

1.    **Heller and McDonald and The Contours of the Second Amendment Right.**

a.    **The Right Established in Heller.**

In District of Columbia v. Heller, 554 U.S. 570 (2008), a D.C. resident brought a

Second Amendment challenge to the District's gun licensing laws, which the Court held

amounted to a complete handgun ban. 554 U.S. at 573-74, 635-36.  In Heller, the Supreme

Court held that the Second Amendment protects  an individual right to possess handguns in

defense of "hearth and home".  Id. at 635.  The District's laws were deemed to be

2

unconstitutional inasmuch as they banned "functional firearms within the home" where "the need for defense of self, family, and property is most acute". Id. at 576, 628.

> In Heller, the Court expressly recognized limitations of the right it announced:
>
> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose . . . nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 626-27. The Court stressed: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive". Id. at 627, n.26.

Consistent with the admonitions in Heller about the limitations of the right recognized, numerous courts considering the scope of Heller have cautioned against construing it more broadly than the Court intended. See U.S. v. Chester, 628 F.3d.673, 676 (4th Cir. 2010) ("Significantly, Heller recognized that the right to keep and bear arms... is limited in scope and subject to some regulation"); U.S. v. Skoien, 614 F.3d 638 (7th Cir. 2010), cert. denied, 131 S.Ct. 1674 (2011); U.S. v. Hall, 2008 WL 3097558 (S.D. W.Va. Aug. 4, 2008), aff'd 337 Fed.Appx. 340 (4th Cir. 2009), cert. denied, 130 S.Ct. 774 (2009); U.S. v. Marzzarella, 614 F.3d 85, 92 (3d Cir. 2010); Osterweil v. Bartlett, 2011 WL 1983340 (N.D.N.Y. May 20, 2011); Peruta v. San Diego, 758 F.Supp.2d 1106 (S.D. Cal. 2010); U.S. v. Masciandro, 648 F.Supp.2d 779,  788 (E.D. Va. 2009) ("The Supreme Court's holding should not be read by lower courts as an invitation to invalidate the existing universe of public weapons regulations"), aff'd, 638 F.3d 458, 474 (4th Cir. 2011); Heller v. District of Columbia ("Heller II"), 698 F.Supp.2d 179, 192, 193-5 (D. D.C. 2010); Williams v. State, 10 A.3d 1167, 1177 (Md. 2011); People v. Dawson, 934 N.E.2d 598, 605 (Ill. App. Ct. 2010);

3

Mack v. U.S., 6 A.3d 1224, 1235-37 (D.C. 2010); Riddick v. U.S., 995 A.2d 212, 222 (D.C. 2010); State v. Knight, 241 P.3d 120, 133 (Kan. Ct. App. 2010); People v. Perkins, 62 A.D.3d 1160, 1161 (3d Dep't 2009) (Second Amendment right is not absolute and may be limited by reasonable government regulation), app. denied 13 N.Y.3d 748 (2009).

> **b.    McDonald Renders the Right Recognized in Heller Applicable to the States.**

On June 28, 2010, in McDonald v. City of Chicago, Ill., _U.S._, 130 S.Ct. 3020 (2010) (plurality), the Court held that the Second Amendment right recognized in Heller is applicable to the states. In McDonald, the Court considered a challenge to handgun bans which were "similar to the District of Columbia's" in Heller. 130 S.Ct. at 3025. The Court struck down the bans, holding: "In Heller, we held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense...We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in Heller." Id. at 3050. The Court made clear that it was not broadening the right and repeated Heller's language concerning the limited effect of these cases on firearms regulations, stating that its holding did not "cast doubt" on "longstanding regulatory measures." Id. at 3047.

> **c.    Post-Heller Constitutional Challenges.**

Neither Heller nor McDonald established a standard for analyzing Second Amendment challenges.    In the wake of these decisions, courts analyzing constitutional challenges to gun laws have taken a number of different approaches.

Many courts analyze whether a challenged statute burdens the "core" Second Amendment right. Where a law does not burden the "core" right -- the right to possession in the home for self-defense -- the analysis is complete and the law survives. Where the law

does burden the core right, the court will determine the applicable level of scrutiny depending on the nature and extent of the burden. See Heller II, 698 F.Supp.2d at 187-88; U.S. v. Walker, 709 F.Supp.2d 460, 466 (E.D. Va. 2010).

The Ninth Circuit, in Nordyke v. King, 2011 WL 1632063, at *8 (9th Cir. May 2, 2011), recently applied a "substantial burden" test, holding that only laws which substantially burden the Second Amendment right should be subject to heightened scrutiny Those that merely regulate, but do not significantly burden, the right are subject only to rational basis review.

Almost no courts have found strict scrutiny applicable to such challenges.  Indeed, some courts have recognized that Heller itself is inconsistent with the idea of subjecting all handgun regulations to strict scrutiny:

> "[A] strict scrutiny standard of review would not square with the [Heller] majority's references to "presumptively lawful regulatory measures" such as laws prohibiting firearms possession by felons and the mentally ill, forbidding the carrying of firearms in schools or government buildings and imposing conditions and qualifications on the commercial sale of arms. Heller, 128 S.Ct. at 2851 (Breyer, J., dissenting); see also Skoien, 587 F.3d at 812 (noting that the court did "not see how the listed laws could be 'presumptively' constitutional if they were subject to strict scrutiny" ); Marzzarella, 595 F.Supp.2d at 604 (observing that "the Court's willingness to presume the validity of several types of gun regulations is arguably inconsistent with the adoption of a strict scrutiny standard of review" ); Dennis A. Henigan, The Heller Paradox, 56 UCLA L. REV. 1171, 1197-98 (2009) (stating that "the Heller majority ... implicitly rejected strict scrutiny" by describing certain gun control measures as presumptively lawful); Carlton F.W. Larson, Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit, 60 HASTINGS L.J. 1371, 1379 (2009) (opining that "it is doctrinally impossible to conclude that strict scrutiny governs Second Amendment claims, while also upholding" the presumptively lawful exceptions specified in Heller ). Therefore, the court rejects the plaintiffs' assertion that strict scrutiny is warranted with respect to the challenged laws."

Heller II 698 F.Supp.2d at 187; see also Peruta, 758 F.Supp.2d at 1117.

Following Heller, the overwhelming majority of courts have applied intermediate or lower scrutiny to Second Amendment claims, even those claims which touch upon gun

possession in the home. Under the intermediate scrutiny standard there must be a "reasonable fit" between the challenged regulation and a "substantial" government objective. Chester, 628 F.3d. at 683; Skoien, 614 F.3d at 641-42 (Intermediate scrutiny applied to possession of gun in the home by domestic violence misdemeanant); Marzzarella, 614 F.3d at 97 (Intermediate scrutiny applied to challenge involving possession of gun with obliterated serial number in the home); U.S. v. Reese, 627 F.3d 792, 800 (10th Cir. 2010), cert. denied, 131 S.Ct. 2476 (2011); Walker, 709 F.Supp. 2d at 466; U.S. v. Pettengill, 682 F.Supp. 2d 49, 55 (D. Me. 2010); U.S. v. Radencich, 2009 WL 127648, at *4 (N.D. Ind. Jan. 20, 2009); Heller II, 698 F.Supp.2d at 181; U.S. v. Elkins, 2011 WL 1637618, at *4 (W.D. Va. May 2, 2011) (Intermediate scrutiny applied to ban on home possession by those against whom an order of protection has been entered); U.S. v. Miller, 604 F. Supp. 2d 1162 (W.D. Tenn. 2009); U.S. v. Tooley, 717 F.Supp.2d 580 (S.D. W.Va. 2010); People v. Delacy, 192 Cal.App.4th 1481, 1495-96 (Cal. Ct. App. 2011).

Post-Heller, courts have consistently rejected challenges to licensing and registration schemes. See Heller II, 698 F.Supp.2d at 190; Justice v. Town of Cicero, 577 F.3d 768 (7th Cir.2009), cert. den'd, 130 S.Ct. 3410 (2010); Williams, 10 A.3d at 1177.

## 2. **Penal Law 400.00 - New York's Gun Licensing Statute**

New York State does not ban handguns, but does regulate them and does require a license for their possession or carrying. See Penal Law 400.00(2)(f); O'Connor v. Scarpino, 83 N.Y.2d 919, 920 (1994). The Penal Law provides for a number of different types of licenses and sets forth the requirements for each. Penal Law § 400.00(1) provides that a license shall only be issued "after investigation and finding that all statements in a proper application . . . are true", and that no license shall be issued unless the applicant: (a) is over 21 years of age; (b) is of "good moral" character; (c) has never been convicted of a felony or

6

"a serious offense"; (d) has fully disclosed any prior history of mental illness or confinement to any hospital or institution "for mental illness"; (e) has not had a firearms license revoked; and (f) if licensed in Westchester County, has completed a firearms safety course and test.

An application for a gun license must be made to a "licensing officer" in the city or county where the applicant resides. Penal Law § 265(10). Every application must be investigated by "the duly constituted police authorities of the locality where such application is made," Penal Law § 400.00(4), who report the results of their investigation to the licensing officer. Penal Law § 400.00(4) and (4-a).

Penal Law § 400.00(14) sets forth the manner in which fees for gun licenses will be established. It does not itself set fees but instead grants that right to local legislative bodies in each county in the State, and provides in relevant part:

> 14. Fees. In the city of New York and the county of Nassau, the annual license fee shall be twenty-five dollars for gunsmiths and fifty dollars for dealers in firearms. In such city, the city council and in the county of Nassau the Board of Supervisors shall fix the fee to be charged for a license to carry or possess a pistol or revolver and provide for the disposition of such fees. Elsewhere in the state, the licensing officer shall collect and pay into the county treasury the following fees: for each license to carry or possess a pistol or revolver, not less than three dollars nor more than ten dollars as may be determined by the legislative body of the county; for each amendment thereto, three dollars, and five dollars in the county of Suffolk; and for each license issued to a gunsmith or dealer in firearms, ten dollars.

Penal Law § 400.00(14) (emphasis added).

### 3.  Relevant Legislative History of Penal Law § 400.00(14).

New York's current handgun law was first codified on May 25, 1911 and was known as the Sullivan Law. See 1911 N.Y. Laws Ch. 195. Intended to curb the "scourge" of handgun violence then sweeping the State, and particularly New York City, the Sullivan Law has regulated the possession and carrying of handguns in New York State for a century. A

7

copy of § 1897 is annexed to the accompanying Declaration of Monica A. Connell ("Connell Decl."), as Exhibit B.

In 1922, the Legislature amended § 1897 to include a provision which imposed a fee of fifty cents for each gun license.  See Connell Decl., Ex. D.  Contrary to Plaintiffs' claim (Pls. Mem. p. 6), that amendment  provided for a fee specifically to help defray the costs incurred by the counties for administering the licensing programs. Connell Decl., Ex. D, 1. In 1938, § 1897 was amended specifically to address the rising costs of administering gun licenses.  The fees were increased from 50 cents to not less than 50 cents and not more than $1.50, with the actual amount to be determined by the local legislature. See Connell Decl., Ex. E at 15-17.  In 1947, in response to complaints that the then-current maximum of $1.50 for a license was not sufficient to cover licensing costs in New York City and was untenable in light of the City's monetary problems at the time, the law was amended to permit New York City to set its own fees, with the intention that the licensing program would be "self-sustaining". See Connell Decl., Ex. F at 7-13.  Since 1947, the New York City Council has been responsible for setting the fees for gun licenses in the City.[2]

Subsequent amendments to similarly exempted Nassau County from the statutory cap when officials there complained that administering licenses was time-intensive and expensive and that the $5.00 fee then charged in Nassau County was insufficient to cover the costs of the licensing program.[3]  See Connell Decl., Ex. G (1973 N.Y. Laws Ch. 546).  In 1984, the fee range applicable to most of the State was increased to its current limits in an

---

[2] See the Cross-Motion for Summary Judgment filed by Defendants Mayor Michael Bloomberg and the City of New York ("the City Defendants").

[3] Nassau County currently charges a two hundred dollar fee for a gun license.  See http://www.police.nassaucountyny.gov/pdf/ InstructionsGeneral%20_2_.pdf. Plaintiffs do not challenge the discretion conferred on or the fee charged by Nassau County.

8

attempt to make the fee more closely approximate actual cost of administration which could then reach as high as $250 and to lessen the vast disparity in some counties between the cost of licensing and the fees collected. See Connell Decl., Ex. H at 36.

## B.      The Instant Action

Plaintiffs commenced this action on or about April 5, 2011, asserting a Second Amendment challenge to New York City Administrative Code § 10-131(a)(2), alleging that the $340 fee charged in the City for the issuance and renewal of a license to possess a handgun in the home is unconstitutional because, they claim, it is more than "nominal" and not used to defray administrative expenses. See Pls. Mem. at pp. 14-19.  Plaintiffs make an "as applied" equal protection challenge to Penal Law § 400.00(14), arguing that the statute treats the Plaintiff New York City residents differently than citizens of the rest of the State, and urge that the provision is subject to strict scrutiny analysis because it burdens the exercise of a fundamental right.  Complaint ¶ 74.  Plaintiffs seek declaratory and injunctive relief,  including a court order capping the fee which the New York City Council may establish at ten dollars. Complaint, Wherefore Cl. ¶¶ iii, iv.

## ARGUMENT

## A.      Standards For Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); O & G Indus., Inc. v. Nat'l R.R. Passenger Corp., 537 F.3d 153, 159 (2d Cir. 2008); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact," i.e. one where the resolution would "affect the outcome of the suit under the

9

governing law." <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original); <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000); <u>Hotel Emps. & Rest. Emps. Union v. N.Y. Dep't of Parks & Rec.</u>, 311 F.3d 534, 543 (2d Cir. 2002).

**POINT I**

**PLAINTIFFS' CLAIMS REGARDING
PENAL LAW § 400.00(14) ARE NOT JUSTICIABLE.**

Pursuant to Article III, § 2, cl. 1, of the U.S. Constitution, the federal courts may hear only "cases" or "controversies", meaning that the federal courts' jurisdiction is limited to disputes which are real and live, not feigned, academic, or conjectural. <u>Russman v. Board of Educ. of Enlarged City Sch. Dist. of City of Watervliet</u>, 260 F.3d 114, 118 (2d Cir. 2001). Standing is a component of Article III's case or controversy requirement. <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101 (1983). Here, whether considered as a failure to set forth a live case or controversy or a lack of standing, Plaintiffs cannot properly invoke this Court's jurisdiction to challenge the Penal Law.

**A.    <u>Plaintiffs' As-Applied Challenge to Penal Law § 400.00(14) Should Be Dismissed as There is No Live Case or Controversy.</u>**

Pursuant to Article III, "[t]he question in each case is whether  the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, or sufficient immediacy and reality to justify judicial resolution". <u>Sanger v. Reno</u>, 966 F.Supp. 151, 159 (E.D.N.Y. 1997), <u>quoting</u> <u>Md. Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S. 270 (1941). A federal court may only hear those cases in which a concrete dispute exists, and in order to challenge the constitutionality of a statute, there must be a showing of a realistic danger of sustaining a direct injury as a result of the statute's enforcement. <u>Babbitt v. United Farm Workers Nat. Union</u>, 442 U.S. 289, 298 (1979).   In the present case there is no "concrete dispute" regarding application of §

10

400.00(14) by the State against the Plaintiffs.  None of the Plaintiffs have sustained a direct injury as a result of the operation of § 400.00 (14) because the statute by its terms does not even apply to Plaintiffs but instead confers discretion on local legislatures to set fees.

Plaintiffs concede that they do not challenge the State's requirement of a license or a fee for that license, nor do they allege that the fee must be uniform throughout the State.  See Pls. Mem. at 14-15, 24; Complaint ¶¶ 1, 2, 7, 8. They make only an "as applied" challenge to § 400.00(14) and seemingly would not contest the New York City fee if it were determined to be either "nominal" or used to defray the costs of administering the licenses, or if it did not exceed ten dollars. See Pls. Mem. at 24;  Complaint ¶¶ 1, 8, 58, Wherefore Cl. iv. Plaintiffs' actual grievance is not that the State statute is being applied to them, but rather is that the New York City fee is allegedly too high.  As such, their claim lies against the local authority whose actions they challenge rather than against the State's enabling statute.

For example, in Fla. E. Coast Ry. v. Martinez, 761 F.Supp. 782 (M.D. Fla. 1991) plaintiffs challenged a Florida state statute that permitted localities to enact ordinances which prohibit trains from emitting an audible warning signal between the hours of 10:00 pm and 6:00 am. Plaintiffs sought a declaration that the state statute violated the Equal Protection Clause.  In granting the motions to dismiss, the court held:

> Section 351.03 (4) (a) empowers counties and municipalities to enact ordinances regarding the sounding of railroad train horns.  The plaintiff's controversy is properly with those municipalities and counties which have enacted such ordinances.  Those municipalities and counties are the parties who have an interest in protecting their ordinances enacted pursuant to § 351.03 (4) (a).  As the entities charged with enforcement of those ordinances, they are the parties with which plaintiff has a dispute.

761 F. Supp. at 784.

As in Martinez, the Plaintiffs' quarrel here cannot be with how the State is applying the statute against them.  Rather it is with how New York City has exercised the discretion

11

conferred on it by § 400.00 (14). Thus Plaintiffs fail to set forth a justiciable case or controversy sufficient to invoke this Court's jurisdiction in regard to Penal Law § 400.00(14). See also Sanger, 966 F. Supp. at 166; Harris v. Bush, 106 F.Supp.2d 1272, 1277 (N.D. Fla. 2000); San Diego Cnty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1130 (9th Cir. 2006) (Plaintiffs lacked standing to challenge assault weapon ban because they could not show that increased cost of "grandfathered" assault weapons was due solely or mainly to the challenged law and not the conduct of third parties).

**B.    Plaintiffs SAF and NYRPA Lack Standing to Prosecute this As-Applied Challenge.**

**1.    Each Plaintiffs' Standing Implicates the Jurisdiction of this Court and Must Be Resolved as Threshold Matter.**

To have standing a plaintiff must demonstrate a personal stake in the outcome of the case to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions. Lyons, 461 U.S. at 101 (quotations omitted); Warth v. Seldin, 422 U.S. 490, 498-99 (1975). Standing must be resolved as a threshold matter and the court has an independent obligation to ensure that standing exists. Ne. Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 663-64 (1993); N.Y. Pub. Interest Research Grp. v. Whitman, 321 F.3d 316, 324-25 (2d Cir. 2003). Plaintiffs must show:

(1)    Injury: Injury in fact, an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical.

(2)    Causation: A causal connection between the injury and the challenged conduct.

(3)    Redressability: It must be likely, as opposed to merely speculative, that the injury complained of will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Plaintiffs must establish standing for each cause of action asserted and each type of relief sought. See Lyons, 461 U.S. at 109; Friends of the Earth, Inc. v. Laidlaw Env. Servs., 528 U.S. 167, 185 (2000).

Those who do not possess Art. III standing may not litigate as suitors in the federal courts. Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 475-476 (1982); see also Lewis v. Casey, 518 U.S. 343, 358 (1996) (Reversing where only two of twenty-two plaintiffs seeking injunctive and declaratory relief had standing and noting that "standing is not dispensed in gross"); Warth, 422 U.S. at 499; Mental Disability Law Clinic v. Hogan, 2008 WL 4104460, at *7 (E.D.N.Y. August 28, 2008) (Holding that "each plaintiff must establish the necessary elements with respect to each claim it asserts on its own behalf or on behalf of others").

Here, the Plaintiffs bear the burden of establishing standing, and, among other "irreducible" requirements each must establish that each has suffered a "personal" injury. Lujan, 504 U.S. at 561. Proof of standing must affirmatively appear in the record at each phase of the proceeding. An organization's interest in a matter "does not provide a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court." Valley Forge Christian College, 454 U.S. at 486.

**2.      SAF and NYRPA Lack Standing to Prosecute this Action.**

Organizations can establish standing on their own behalf or as a representative of the interests of their members, which is sometimes called "associational" standing. See Warth, 422 U.S. at 511. In this controversy, SAF and NYRPA purport to assert claims on their own behalf and on behalf of their members. See Complaint ¶¶ 46-54.

a.      The Organizations Cannot Establish Direct Standing.

An association may establish standing to sue on its own behalf when it can set forth a constitutional injury it has suffered as a result of the challenged conduct. Warth, 422 U.S. at 509. Plaintiffs SAF and NYRPA may not and have not themselves applied for premises licenses and have not been charged fees under Penal Law § 400.00(14). Nor have they asserted any constitutional injury that they have suffered as a result of § 400.00(14). As such, they fall short of the statement of "concrete and particularized injury" required to establish direct standing. Lujan, 504 U.S. at 560-561.

b.      The Organizations Cannot Establish Associational Standing.

An association may establish standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333 (1977). Here, SAF and NYRPA lack standing to prosecute this action. Although in some cases, SAF has been determined to have standing to assert a constitutional challenge, these cases have involved facial attacks on statutes. See, e.g., Dearth v. Holder, 641 F.3d 499 (D.C. Cir. 2011); Wollard v. Sheridan, 2010 WL 5463109 (D. Md. Dec. 29, 2010).

Here, Plaintiffs' claims as regards Penal Law 400.00(14) are "as applied". See Complaint, ¶ 74. Accordingly, plaintiffs must demonstrate how the statute is unconstitutional as applied *to them*. The challenged statute has not been applied to the organizational Plaintiffs, nor could it have been. Furthermore, to the extent they purport to represent "members" who "would apply for a Residence Premises handgun license but for the prohibitive $340 fee", they have failed to identify a single member for whom this is true. See

14

Complaint, ¶¶ 48, 53. See also Warth, 422 U.S. at 509; Summers v. Earth Island Inst., 129

S.Ct. 1142, 1151 (Finding organization lacked associational standing where it only set forth

that unidentified members have been harmed in an unidentified manner); N.R.A. v. Magaw,

132 F.3d 272, 295 (6th Cir. 1997) (NRA lacked standing to challenge statute where it had

not asserted an actual or imminent injury in fact); N.R.A. v. City of Pittsburgh, 999 A.2d

1256, 1258 (Pa.Commw. Ct. 2010); N.R.A. v. City of Philadelphia, 977 A.2d 78

(Pa.Commw. Ct. 2009), app. denied, 996 A.2d 1068 (Pa. 2010).

Finally, Plaintiffs bring this action pursuant to 42 U.S.C. § 1983. See Complaint ¶ 9.

SAF and NYPRA cannot assert claims on behalf of their members pursuant to that statute.

Nnebe v. Daus, 2011 WL 2149924, at *6 (2d Cir. May 31, 2011), citing League of Women

Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors, 737 F.2d 155, 160 (2d

Cir.1984); Aguayo v. Richardson, 473 F.2d 1090 (2d Cir.1973), cert. denied, 414 U.S. 1146

(1974) ("Neither [the] language nor the history [of § 1983] suggests that an organization may

sue under the Civil Rights Act for the violations of rights of members"). So they must,

themselves, satisfy the test for standing. Because SAF and NYRPA have not shown any

cognizable constitutional injury caused by the § 400.00(14), or any basis for associational

standing to represent the interests of members, they must be dismissed as plaintiffs.

### POINT II

### PENAL LAW § 400.00(14) COMPORTS WITH THE FOURTEENTH AMENDMENT.

Plaintiffs allege that Penal Law § 400.00(14) violates their equal protection rights

because it "protects" citizens throughout most of the state by imposing a maximum fee of ten

dollars for a gun license but permits the City Council in New York City to set higher fees.

See Complaint ¶¶ 2, 8. Plaintiffs' equal protection claim fails for the reasons set forth below.

**A.**   **Plaintiffs' Equal Protection Claim Fails Because § 400.00(14) Does Not Unconstitutionally Burden Plaintiffs' Second Amendment Rights.**

The Equal Protection Clause provides that "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is "a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "If a law neither burdens a fundamental right, nor targets a suspect class, [the court] will uphold the legislative classification so long as it bears a rational relation to some legitimate end". Id. at 440.   The party challenging the statute "bears the burden of showing that there is no reasonable basis for the challenged distinction." Bach v. Pataki, 289 F. Supp.2d 217, 228 (N.D.N.Y. 2003), aff'd 408 F.3d 75 (2d Cir. 2005), cert. denied, 546 U.S. 1174 (2006), overruled on other grounds by McDonald, 130 S.Ct. at 3050.

Almost every statutory enactment "classifies for one purpose or another, with resulting disadvantage to various groups or persons." Romer v. Evans, 517 U.S. 620, 631 (1996).   The Supreme Court has held that where a classification "neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." Id.; Heller v. Doe, 509 U.S. 312, 319-320 (1993).   Legislation is presumed to be valid and will be sustained if rationally related to a legitimate state interest. City of Cleburne, 473 U.S. at 439.

Plaintiffs are not members of a suspect class. City of Cleburne, 473 U.S. at 440. Thus their equal protection claim rests on the argument that Penal Law § 400.00(14) impermissibly burdens a fundamental right.   However, heightened scrutiny under the equal protection clause is not triggered merely because a law touches upon or relates to a constitutional right.   Instead, the challenged classification must "jeopardize" or

16

"substantially" or "severely" burden the fundamental right. Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); Nordyke, 2011 WL 1632063, at *3; Perkins, 62 A.D.3d at 1161. A law does not unconstitutionally burden a constitutional right "simply because it makes that right more expensive or difficult to exercise" or because it declines to use government funds to "facilitate the exercise of that right". Nordyke, 2011 WL 1632063, at *8, citing Gonzales v. Carhart, 550 U.S. 124 (2007); Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 874 (1992); Harris v. McRae, 448 U.S. 297, 313 (1980).

The Second Amendment right recognized by the Supreme Court in Heller is a right to possess handguns in the home for self-defense. Heller, 554 U.S. at 628, 635. Nothing about the right recognized in Heller invalidates the requirement of a license for a handgun or the imposition of a fee for such license. Quite to the contrary, the Court in Heller recognized that "the right secured by the Second Amendment is not unlimited" and held that, assuming that plaintiff Heller was not otherwise disqualified, the District of Columbia was required to issue him a license and permit him to register his gun. Heller, 554 U.S. at 626-27, 635. See, e.g., Com. v. Lee, 2011 WL 710997, at *2 (Mass. Super. 2011) ("Nor do [Heller and McDonald] suggest any constitutional flaw in licensing and registration requirements"). Statutes requiring licenses and permits have been upheld post-Heller. See Heller II, 698 F.Supp.2d at 190; Justice, 577 F.3d at 774; Williams, 10 A.3d at 1177.

Perhaps in recognition of this, Plaintiffs here do not challenge the requirement of a license, the imposition of a fee, or the necessity of performing an investigation prior to the issuance of a license.[4]   See Complaint ¶¶ 1, 2, 7. In fact, Plaintiffs explicitly state that

---

[4]   Although not challenging the requirement of a license, Plaintiffs incorrectly assert that only New York and Illinois require a license to possess a gun in one's home. Many states, as well as the District of Columbia, require a license, permit, or certificate to

> [T]his lawsuit challenges only § 10-131(a) (2) of the City of New York
> Administrative Code, which requires applicants in New York City to pay an
> additional $340 fee, and § 400.00(14) of the New York Penal Law, which
> authorizes the City to charge different fees than other licensing authorities
> throughout the State. This lawsuit does not otherwise challenge the laws of the
> City and the State governing the issuance of handgun licenses.

Complaint ¶ 8.

Merely because § 400.00(14) relates to handguns, and permits localities to charge

"different fees", does not mean that it burdens a fundamental right. Plaintiffs' constitutional

challenge to Penal Law § 400.00(14) fails because that section permissibly allows local

legislative bodies to set licensing fees and does not "jeopardize" or "impermissibly

interfere" with the exercise of a fundamental right. Nordlinger, 505 U.S. at 10; Affronti v.

Crosson, 95 N.Y.2d 713, 718-719 (2001), cert. denied, 534 U.S. 826 (2001).  Unlike the

complete handgun bans at issue in Heller and McDonald, laws like § 400.00(14) which

regulate, as opposed to ban, gun possession do not substantially or severely burden the

Second Amendment right, even if they make the right more expensive to practice. See

Nordyke, 2011 WL 1632063, *3, 8; Perkins, 62 AD3d at 1161 ("Unlike the statute at issue in

Heller, Penal Law 400.00(14) does not effect a complete ban on handguns and is, therefore,

not a 'severe restriction' improperly infringing upon defendant's Second Amendment

---

purchase or possess a handgun, regardless of where that handgun is kept and thus have a

de facto license requirement for possession in the home. See, e.g., Haw. Rev. Stat. §§

134-2(a); N.C. Gen. Stat. Ann. § 14-402(a); Mich. Comp. Laws Ann. § 28.422(1); D.C.

Mun. Regs. tit. 24, § 2320.1 (West 2011).  Although some states, such as New Jersey,

allow handgun possession in the home without a permit to carry, it is not clear how one

would come to possess the handgun without "acquiring" it first – and acquiring the

handgun requires a permit.  Compare N.J. Stat. Ann. § 2C:39-6(e) with N.J. Stat. Ann. §

2C:58-3(a).  See also Md. Code Ann., Crim. Law §4-203(b)(6); Md. Code Ann., Pub.

Safety § 5-117.

18

rights"); People v. Hughes, 83 A.D.3d 960 (2d Dep't 2011). In fact, § 400.00(14) does not even establish the fee of which Plaintiffs complain. That fee is set by the New York City Council. Because merely permitting the variable imposition of a fee, without more, does not unconstitutionally burden Plaintiffs' Second Amendment rights, the Court's inquiry should stop there, and the provision should withstand constitutional scrutiny. See, e.g., Reese, 627 F.3d at 800-01; Heller II, 698 F.Supp.2d at 188; Williams v. State, 2011 WL 13746, at *8 (Md. 2011); Wilson v. Cook Cnty., 943 N.E.2d 768, 776-77 (Ill. App. Ct. 2011).[5]

**B.      Plaintiffs' Equal Protection Claim Fails Because Plaintiffs Are Not Similarly Situated to Persons in Other Parts of New York.**

The Equal Protection Clause "does not forbid classifications. It simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Nordlinger, 505 U.S. at 10. To succeed in an equal protection challenge, plaintiffs must show a high degree of similarity between themselves and other persons to whom they compare themselves such that no rational person could justify differential treatment. See Ruston v. Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010), cert. denied, 131 S.Ct. 824 (2010). "[L]egislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Bach, 289 F.Supp.2d at 228. The party attacking the legislative classification bears the burden of demonstrating "there is no reasonable basis for the challenged distinction." Id.

---

[5] Alternatively, the Court may apply rational basis review and find that the statute survives because the Legislature reasonably concluded that it should permit the licensing fees collected in the City to more approximately cover licensing costs so that the licensing program would be " self-sustaining" . See Connell Decl., Ex. F; see Nordyke, 2011 WL 1632063 at *14; Richards v. Cnty. of Yolo, 2011 WL 1885641, *6 (E.D. Cal. 2011); Delacy, 192 Cal. App. 4th at 1495-96.

19

The equal protection guarantee in the Constitution does not require that the law "operate in the same manner upon all persons within the State" nor does it require territorial uniformity, even where some inequality may result. Kail v. Rockefeller, 275 F.Supp. 937, 942 (E.D.N.Y. 1967). Statutory schemes which merely create differences in geographic areas will survive equal protection challenges. See Tolub v. Evans, 58 N.Y.2d 1, 8 (1982). The states' ability to tailor their laws to geographic realities has repeatedly been recognized. Salsburg v. Maryland., 346 U.S. 545, 551 (1954)("The Equal Protection Clause relates to equality between persons as such rather than between areas....Territorial uniformity is not a constitutional prerequisite") citing Missouri v. Lewis, 101 U.S. 22, 31 (1879); McGowan v. Maryland, 366 U.S. 420, 425 (1961); Ocampo v. U.S., 234 U.S. 91, 98-99 (1914); Los Angeles Cnty. Bar Ass'n v. Eu, 979 F.2d 697, 708 (9th Cir.1992) ("[T]he equal protection clause does not require that states treat all persons within their borders identically.").

Thus, the New York State Legislature may lawfully take into account circumstances presented within its many counties, permissibly pass laws with territorial variation and consider matter practical matters such as population density. Town of Somers v. Camarco, 308 N.Y. 537, 541 (1955); People v. Richter, 206 Misc. 304, 307-308 (N.Y. Sp. Sess. 1954). In fact, many laws in New York State contain "carve outs" wherein the City of New York (or other cities with large populations) are treated differently than the rest of the State without implicating any equal protection concerns. See People v. Kuri, 132 Misc.2d 1036, 1037 (N.Y. City Crim. Ct. 1986) (High population density and crime rate in New York City justified requirement of special gun permit within New York City); Richter, 206 Misc. at 307-308; see also Penal Law § 405.10; Agric. & Mkts. Law § 107; Veh. & Traf. Law § 375.

These exemptions or exceptions under State law are reflective of New York City's unique position in the State. See U.S. v. Cavera, 550 F.3d 180, 195 (2d Cir. 2008)

20

(Recognizing special significance, and "greater risk of harm," of guns trafficked into urban areas like New York City, with urban crime problems and greater population density), cert. denied, 129 S.Ct. 2735 (2009); Kuri, 132 Misc.2d at 1037.   New York City, although comprising significantly less than one percent of the land area of the State of New York, contains forty-three percent of the State's population.   The population density of the State as a whole, including the City, is 410.4 persons per square mile. New York City's population density      is      26,402.9      persons      per      square      mile.      See http://quickfacts.census.gov/qfd/states/36000.html   (citing   U.S.   census   statistics); http://quickfacts.census.gov/qfd/states/36/3651000.html.  Although New York City is one of the safest big cities in the nation, and in recent years has experienced a reduction in crime that sometimes outpaces that in the rest of the State, even today it accounts for approximately half of violent crimes in the State and a large portion of all crimes.    See http://criminaljustice.state.ny.us/pio/annualreport/2010-crime-in-nys-preliminary.pdf.  New York City, because of its large population, processes thousands of gun applications per year, more than any other locality in the State by far, resulting in significant investigative and administrative costs.   For example, on average, the City processes 2,612 new handgun license applications and 9,522 renewal applications per year.   See Declaration of James Sherman, Ex. B; Declaration of Andrew Lunetta, ¶ 3.

Plaintiffs' equal protection claim fails because Plaintiffs have not established that the discretion allowed to New York City by § 400.00(14) is improper or that license applicants in New York City are similarly situated to gun license applicants in other parts of the State. The mere fact that Penal Law § 400.00(14) allows for geographic distinctions between different areas of the State does not render it constitutionally invalid. See City of Cleburne, 473 U.S. at 440; Peruta, 758 F.Supp.2d at 1118, and instead, reflects the Legislature's

21

judgment that the costs to the City of administering and investigating licensing fees were different from other areas of the State and the City should be permitted leave to set fees sufficient to cover the costs of licensing.  See Connell Decl., Ex. F.

This result is consistent with other post-Heller decisions.  In the context of gun licensing, geographic disparities in licensing statutes have survived constitutional challenges on the grounds that residents of different geographic territories are not "similarly situated". See Osterweil, 2011 WL 1983340, at *11 (Rejecting equal protection challenge to licensing statute because part-time and full-time State residents are not similarly situated); Peterson v. LaCabe, 2011 WL 843909, at *8-9  (D. Colo. March 8, 2011) (Rejecting equal protection challenge because out-of-state resident is not similarly situated to in-state resident); Peruta, 758 F.Supp.2d at 1119 (Holding that non-residents of San Diego County were not similarly situated to residents for the purposes of gun licensing); see also Bach, 408 F.3d at 81.

## POINT III

### BECAUSE PENAL LAW § 400.00(14) REGULATES BUT DOES NOT BURDEN PLAINTIFFS' SECOND AMENDMENT RIGHT, STRICT SCRUTINY IS INAPPLICABLE HERE.

Plaintiffs candidly concede that even in the Second Amendment context, "intermediate scrutiny should apply to laws that impose reasonable and non-preclusive regulations that do not serve the purpose of disarmament", Pls. Mem. p. 22, but argue that strict scrutiny applies here because the discretion given to the City in setting fees is unlimited.  They rely upon voting and election law, citing Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173 (1979), and First Amendment jurisprudence, to assert that Penal Law § 400.00(14) must be subject to strict scrutiny.  Plaintiffs are mistaken.  Even were the Court to subject § 400.00(14) to some form of heightened scrutiny, intermediate scrutiny is applicable and the statute survives such scrutiny.

22

A.      **Penal Law § 400.00(14) Does Not Permit Localities to Impose Unlimited Fees, It Does Not Severely Burden Plaintiffs' Core Second Amendment Right.**

Plaintiffs concede that not all localities must charge the same licensing fees and that fees need not be uniform but argue without citation that the "unlimited" fees permitted by § 400.00(14) render citizens of New York City without "*any* protection against prohibitive fees". See Pls. Mem. pp. 14-15, 24. This argument must be rejected.

Legislatures are presumed to act lawfully and constitutionally. Salsburg, 346 U.S. at 554. Under New York law, a license or permit fee must relate to the cost of administering the relevant laws or it may successfully be challenged as an unlawful tax and will be struck or reduced. Bon Air Estates, Inc. v. Vill. of Suffern, 32 A.D.2d 921, 922 (2d Dep't 1969); see also ATM One L.L.C. v. Vill. of Freeport, 276 A.D.2d 573, 574 (2d Dep't 2000) (Holding license fee cannot exceed sum necessary to cover the costs of license issuance, inspection and enforcement" or are otherwise invalid as an unauthorized tax.); Suffolk Cnty. Builders Ass'n v. Suffolk Cnty., 46 N.Y.2d 613, 619 (1979); Phillips v. Clifton Park Water Auth., 286 A.D.2d 834, 835 (3d Dep't 2001), app. denied, 769 N.E.2d 353 (N.Y. 2002); Torsoe Bros. Constr. Corp. v. Bd. of Trs. of Vill. of Monroe, 49 A.D.2d 461, 465 (2d Dep't 1975); Tillim v. Vill. of Hunter, 2009 WL 3456321 (Sup. Ct. 2009). New York City's exercise of the discretion allowed by Penal Law § 400.00(14) is thus cabined by these requirements, which exist separate from any Equal Protection claims as regards the State statute. Thus, insofar as Plaintiffs claim that the City's fee does not comport with its actual licensing costs, that claim can and should be decided without resort to constitutional analysis.

To the extent that Plaintiffs' challenge to § 400.00(14) can be understood to rest upon the assertion that the State's delegation of authority to the localities to set any fee that was more than "nominal" was unconstitutional, this argument must also be rejected. Plaintiffs

23

base their assertion that New York may only impose a "nominal" fee for a gun license on Murdock v. Pennsylvania, 319 U.S. 105, 113-14 (1943), a First Amendment case in which the Court held a tax on the distribution of religious literature unconstitutional, in part because it was "not a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question." Plaintiffs' extrapolation that all fees on protected activity must be "nominal" is directly contradicted by Forsyth Cnty. v. Nationalist Movement, 505 U.S. 123 (1992), where the Court noted that Murdock was simply distinguishing a prior case and stated: "This sentence does not mean that an invalid fee can be saved if it is nominal, or that only nominal charges are constitutionally permissible. It reflects merely one distinction between the facts in Murdock and those in Cox." See Cox v. New Hampshire, 312 U.S. 569, 577 (1941). Thus, the proposition that "the city can only impose a *nominal* fee that serves to defray attendant administrative cost," is simply untrue.  See Pls. Mem. p.15.  Courts routinely allow localities to impose more than "nominal" fees on constitutionally protected activities, even in the First Amendment context. See, e.g., 729, Inc. v. Kenton Cnty. Fiscal Court, 402 Fed. Appx. 131, 133-134 (6th Cir. 2010) (Upholding $3,000 annual licensing fee for adult businesses); Ne. Ohio Coal. for the Homeless v. City of Cleveland, 105 F.3d 1107, 1108, 1110 (6th Cir. 1997) (Holding law requiring street peddlers of magazines to pay $50 annually for license, was more than "nominal," but not "unreasonable"); Stonewall Union v. City of Columbus, 931 F.2d 1130, 1132, 1136 (6th Cir. 1991) (Rejecting plaintiffs' reliance on Murdock's use of "nominal" and finding $757.50 "user fees" were constitutional because they were "reasonably related" to city's interests); Mastrovincenzo v. City of New York, 435 F.3d 78, 83, 100 (2d Cir. 2006) (Holding $200 annual licensing fees were constitutional and met the city's "significant governmental interests"); Turley v. Police Dep't of New York, 167 F.3d 757, 761 (2d Cir. 1999); Gannett Satellite Info. Network, Inc. v. Metro. Transp.

24

Auth., 745 F.2d 767, 774-75 (2d Cir. 1984)(Upholding licensing fees totaling $13,000 for newsracks where it supported MTA's interests).

While it is true that government cannot tax protected activities "without constitutional limit," Plaintiffs have utterly failed to show how that proposition invalidates Penal Law 400.00(14). Instead, Plaintiffs present some activities on which governments may not impose any fees at all – such as the right to vote – without explaining why this activity – possessing a handgun – should be among them. Here, the State is not the entity establishing New York City's fees, so the foregoing applies with greater force where a State law merely allows a locality discretion to set fees.

**B.      Plaintiffs' Reliance on Illinois State Board of Elections for the Proposition that Strict Scrutiny Applies Here is Misplaced.**

Plaintiffs argue that Penal Law § 400.00(14), in permitting the City discretion to set a gun license fee, impermissibly burdens their "core" Second Amendment rights and thus should be subject to strict scrutiny. This argument also fails. Contrary to Plaintiffs' argument, strict scrutiny does not apply to every law that regulates or even burdens the exercise of a fundamental right. Nordyke, 2011 WL 1632063, at *6.

Plaintiffs misplace reliance upon voting and election cases in general, and upon Illinois State Bd. of Elections, in particular, for the proposition that a state law which touches upon the exercise of a fundamental constitutional right must be subject to "strict scrutiny" and that the state must adopt the "least restrictive means necessary" to achieve its end. See Complaint ¶¶ 72, 73. The holding of Illinois has been limited by subsequent decisions holding that laws which burden associational, voting and election-related rights are not necessarily subject to strict scrutiny. See Clingman v. Beaver, 544 U.S. 581, 592 (2005) ("[S]trict scrutiny is appropriate only if the burden [on associational rights] is severe");

25

Timmons v. Twin Cities Area New Party, 520 U.S. 351, 364 (1997) (Where the burden on associational rights was not "severe," the state's interests only needed to be "sufficiently weighty"); Burdick v. Takushi, 504 U.S. 428, 434 (1992); Anderson v. Celebrezze, 460 U.S. 780, 789 (1983); Shugart v. Chapman, 366 F. App'x 4, 5-6 (11th Cir. 2010); Price v. N.Y. State Bd. of Elections, 540 F.3d 101, 108-09 (2d Cir. 2008); Wilson v. Firestone, 623 F.2d 345, 346 (5th Cir. 1980) (Rejecting Illinois' "anomal[ous]" holding); see also Crawford v. Marion Cnty. Election Bd., 533 U.S. 181, 190 (2008) at n. 8 ("[The Court has] rejected the argument that strict scrutiny applies to all laws imposing a burden on the right to vote"); Montserrate v. N.Y. State Senate, 599 F.3d 148, 154-55 (2d Cir. 2010). Thus, contrary to Plaintiffs' assertion, Illinois does not establish that any law which touches upon a fundamental right will be subject to strict scrutiny.

**C.    Plaintiffs' Reliance Upon First Amendment Jurisprudence Fails to Support Their Argument for the Application of Strict Scrutiny.**

Plaintiffs cite to and rely upon First Amendment jurisprudence to support their argument that the Court must apply strict scrutiny here. See, e.g., Pls. Mem. at pp. 14-15, 19-23. However, First Amendment jurisprudence is not directly applicable in the Second Amendment context and, even if it were, would not mandate strict scrutiny.

**1.    The Direct Application of First Amendment Jurisprudence in the Second Amendment Context Has Been Rejected.**

Plaintiffs argue that the gun licensing laws should be deemed "prior restraints" and be subject to strict scrutiny similar to statutes which prohibit speech based upon its content. Pls. Mem. at p. 14. Some courts have looked to First Amendment jurisprudence to offer "guidance" or "inform" the development of an applicable standard of review in Second Amendment cases. See, e.g., Chester, 628 F.3d at 682 (Looking to "the First Amendment as a guide in developing a standard of review for the Second Amendment."); Marzzarella, 614

F.3d at 97 ("While we recognize the First Amendment is a useful tool in interpreting the Second Amendment, we are also cognizant that the precise standards of scrutiny and how they apply may differ under the Second Amendment."). However, Plaintiffs' attempt to argue that the regulation of speech is identical to the regulation of guns such that unique First Amendment doctrines should be applied wholesale to the Second Amendment is not supported by common sense or precedent.[6]

Simply adopting First Amendment standards of review would ignore the critical fact that the right of free expression is distinct and qualitatively different from the right to carry a handgun. Even in the First Amendment context, the communication of ideas by conduct, as opposed to "pure speech" is subject to less protection. Shuttlesworth v. City of Birmingham, Ala., 394 U.S. 147, 152 (1969). Furthermore, in assessing a First Amendment challenge, courts may consider the government interest involved, including public safety concerns, in upholding limitations on speech. Schenck v. Pro-Choice Network of W. N.Y.,

---

[6] In his concurrence in Chester, Judge Davis criticizes the application of First Amendment doctrines to the Second Amendment and observes that Heller's "limited references are hardly an invitation to import the First Amendment's idiosyncratic doctrines wholesale into a Second Amendment context, where, without a link to expressive conduct, they will often appear unjustified." Chester, 628 F.3d at 687 (Davis, J., concurring). Judge Davis is not alone in this approach. Courts which have considered application of novel First Amendment jurisprudence in the Second Amendment context have repeatedly rejected the same. For example, courts have refused to import the "overbreadth" doctrine into Second Amendment challenges. See Masciadaro, 638 F.3d at 474; Skoien, 614 F.3d at 645.

27

519 U.S. 357, 375-376 (1997).  Certainly, in the context of the regulation of guns, such considerations are even more pressing.

Plaintiffs' "prior restraint" argument (Pls. Mem. pp. 14-15) is meritless.  A "prior restraint" is a regulation which suppresses speech at the discretion of government officials on the basis of the speech's content and in advance of its actual expression. U.S. v. Quattrone, 402 F.3d 304, 309 -310 (2d Cir. 2005). It is uniquely linked to the First Amendment. Gannett Co. v. DePasquale, 443 U.S. 368, 393 n. 25 (1979). Plaintiffs cite no case that makes that doctrine applicable to the regulation of guns.[7]

Furthermore, Plaintiffs' First Amendment arguments are inconsistent with Heller's own recognition that the Second Amendment right is subject to substantial and numerous limitations—all of which could properly be characterized as prior restraints.  Heller, 554 U.S. at 626-27; Heller II 698 F.Supp.2d at 187; see also Lawrence Rosenthal, Second

---

[7]  Plaintiffs argue that §400.00(14) should be voided because in setting a fee for a gun license, the State Legislature had an illicit or unconstitutional purpose, akin to content-based censorship. See Pls. Mem. pp. 6-8.  In support of this argument, they cite two comments in the legislative record, made by individuals, that the imposition of a higher license fee might have a collateral beneficial effect of the issuance of fewer licenses.  The Court should reject this argument.  A statute, otherwise constitutional, cannot be voided as unconstitutional on the basis of " an alleged illicit legislative motive". Nordyke v. King, 2011 WL 1632063 at *12, citing U. S. v. O'Brien, 391 U.S. 367, 383-384 (1968). The statements of individual legislators do not constitute the intent and motives of the legislature as a whole and will not be a sufficient basis on which to invalidate a statute. Id. Furthermore, even the portion of the legislative record upon which Plaintiffs rely states that the purpose of the fee increase was to cover the expenses associated with license issuance since the then-current fee did not cover the actual costs incurred. See Pls. Exhibit 16, p. 6.  Plaintiffs' allegation of improper motive is thus meritless.

28

Amendment Plumbing After Heller: Of Standards of Scrutiny, Incorporation, Well Regulated Militias, and Criminal Street Gangs, 41 Urb. Law 1, 83 (2009).  Following Plaintiffs' prior restraint argument to its logical conclusion would mean that nearly every firearm regulation would be presumptively invalid.  Heller, itself, precludes that approach. 554 U.S. at 626-27.

> **2.      Even   Under   First   Amendment   Analysis,   Strict   Scrutiny   is Inapplicable Here.**

Plaintiffs' reliance upon First Amendment jurisprudence is puzzling since even if First Amendment standards were directly imported into the Second Amendment context here, they would not result in the application of strict scrutiny. In the three Second Amendment cases upon which Plaintiffs primarily rely, Marzzarella, Chester and Reese (Pls. Mem. pp. 19-20), the courts held that intermediate scrutiny, at most, would apply. In Marzzarella, the plaintiff brought a Second Amendment challenge to a federal statute which prohibited the possession of guns with obliterated serial numbers.  614 F.3d at 97-98. Plaintiff had been arrested with such a gun in his home.  The Third Circuit held that even if the challenged statue were deemed to burden the Second Amendment right, which was not free from doubt, intermediate scrutiny would apply. Considering First Amendment doctrines, the Court held that the challenged statute was akin to a time, place and manner regulation and could not be analogized to a content based restriction and further held that

> Whether or not strict scrutiny may apply to particular Second Amendment challenges, it is not the case that it must be applied to all Second Amendment challenges. Strict scrutiny does not apply automatically any time an enumerated right is involved. We do not treat First Amendment challenges that way.

Id., 614 F.3d at 96.  Similarly, in Chester, the Fourth Circuit rejected the application of strict scrutiny under First Amendment principles, holding "We do not apply strict scrutiny

whenever a law impinges upon a right specifically enumerated in the Bill of Rights." 628 F.3d at 682; see also Reese, 627 F.3d at 801; Nordyke, 2011 WL 1632063, *6-7.

Contrary to Plaintiffs' argument, provisions that burden fundamental rights, such as voting and speech rights, are not invariably subject to strict scrutiny and may be subject to intermediate or lower forms of scrutiny. Osterweil, 2011 WL 1983340, at *7. Here, even if First Amendment principles were applied, Penal Law § 400.00(14) does not severely or substantially burden a fundamental right and, instead, is more akin to a time, place and manner regulation which would be subject, at most, only to intermediate scrutiny. Marzzarella, 614 F.3d at 97-98; Osterweil, 2011 WL 1983340, at *7; Chester, 628 F.3d at 682. This comports with the holdings of the vast majority of courts, post-Heller, which have applied intermediate scrutiny to statutes which appear to burden the Second Amendment right. See Osterweil, 2011 WL 1983340, *7; Wilson, 943 N.E.2d at 776-77 (gathering cases); see also Heller II, 698 F.Supp.2d at 188; Walker, 709 F.Supp.2d 460; Miller, 604 F. Supp. 2d 1162.

## POINT IV

### EVEN IF PENAL LAW § 400.00(14) WERE DEEMED TO BURDEN PLAINTIFFS' SECOND AMENDMENT RIGHT, PLAINTIFFS' CHALLENGE WOULD FAIL BECAUSE THE STATUTE CAN WITHSTAND INTERMEDIATE SCRUTINY.

Following Heller, there have been a number of different approaches in Second Amendment cases, with most but not all cases looking first at whether the challenged provision burdens the core Second Amendment right. If not, the challenge fails and no further analysis is required. Heller II, 698 F.Supp.2d at 186.

If the statute does implicate the core right, then the nature of the burden imposed is addressed and a level of scrutiny applied.  Almost uniformly, courts have applied

intermediate scrutiny to Second Amendment challenges even where the core Second Amendment right is implicated. See, e.g., Skoien, 614 F.3d at 641-42; Chester, 628 F.3d. at 682; Marzzarella, 614 F.3d at 97; Reese, 627 F.3d at 800; Osterweil, 2011 WL 1983340, at *10; Peruta, 758 F.Supp.2d at 1117; Masciandro, 648 F.Supp.2d at 788. Thus, even were this Court to determine that Penal Law § 400.00(14), in conferring discretion on the City Council to set fees for gun licenses, burdens the Plaintiffs' Second Amendment right, because the statute withstands intermediate scrutiny, Plaintiffs' challenge would fail.

Although there is some variation in the definition of intermediate scrutiny, generally a law will survive intermediate scrutiny if it is substantially related to an important governmental interest, Clark v. Jeter, 486 U.S. 456, 461 (1988), or if there is a "reasonable fit" between the challenged regulation and a "substantial" government objective. Chester, 628 F.3d. at 683; Skoien, 614 F.3d at 641; Marzzarella, supra, 614 F.3d 85. "[T]he state's policy need not be perfect, only substantially related to a 'significant,' 'substantial,' or 'important' governmental interest." Osterweil, 2011 WL 1983340, *10, citing Marzzarella, 614 F.3d at 98. Penal Law § 400.00(14) survives such scrutiny.

The State has an important, even a compelling, interest in regulating handguns because firearm-related violence is a significant public health and safety concern. United States v. Salerno, 481 U.S. 739, 748-50 (1987) (Government's interest in preventing crime is compelling and can in some circumstances outweigh an individual's liberty interest); Schall v. Martin, 467 U.S. 253, 264 (1984). Since 1960, more Americans have been murdered with guns than were killed in all the wars in the twentieth century combined. See David Hemenway, Private Guns, Public Health, 45 (University of Michigan Press 2004). The toll of gun-related violence is a daily fact of American life. For example, during the 1990s, firearms were used to kill more than ninety people and wound about three hundred more per

31

day on average. See Hemenway, supra, 1. In 2007, there were 18,361 criminal homicides, of which 69% were committed with guns, three quarters of those with handguns; emergency rooms treated nearly 50,000 nonfatal gunshot injuries; and there were over 300,000 assaults and robberies in which the perpetrator used a gun. See http://www2.fbi.gov/ucr/cius2009/data/table_19.html. In New York State alone, 481 people were killed with firearms in 2009 (300 in New York City and 181 outside of New York City); United States Center for Disease Control, Nat'l Vital Statistics Report (2007); http://www.cdc.gov/NCHS/data/nvsr/nvsr58/nvsr58_19.pdf.   New York State regulates handguns because they are particularly subject to misuse. More than 75% of all gun-related killings involve a handgun. Zimring & Hawkins, Crime Is Not the Problem: Lethal Violence in America, Chapters 1, 3 and 7; Zimring & Hawkins, The Citizen's Guide to Gun Control, New York, at Chapter 5, p. 38.  In addition to criminal assaults and murders, guns in the home have a substantial impact on the rate of completed suicide attempts.  "Compelling" empirical research demonstrates that having a gun in the home increases the risk of a suicide to between two to ten times than in a home without a gun, not just in regard to the gun owner, but also to any spouse or children in the home. Matthew Miller and David Hemenway, Guns and Suicide in the United States, 359 New Eng. J. Med. 989, 991, (September 4, 2008).

The State's vital interest in providing for public safety by its handgun licensing regime cannot be contested. See Heller II, 698 F.Supp.2d at 190-191; Masciandaro, 648 F.Supp.2d at 789.  For example, in Masciandaro, the Fourth Circuit recognized the public safety interests implicated by gun regulations and the government's interest in avoiding "armed mayhem." Masciandaro, 638 F.3d at 471 quoting Skoien, 614 F.3d at 642; see also Peruta, 758 F.Supp.2d at 1117.  In furtherance of this interest, courts have recognized the

32

government's need to perform adequate investigation in connection with gun licenses. See, e.g., Osterweil, 2011 WL 1983340 (Affirming State's substantial interest in monitoring those who receive gun licenses); Peterson, 2011 WL 843909, at*5 (Noting State's interest in investigating applicants to determine fitness for gun license justified prohibition on issuance of concealed carry licenses to out of state residents); Lee, 2011 WL 710997, at *2; Bach, 408 F.3d at 92-93 (Noting state's interest in ensuring eligibility criteria for gun license are met).

Even in recognizing an individual Second Amendment right, the Supreme Court held that the right is not unlimited and may be denied to entire classifications of people who would pose an undue risk to public safety. Heller, 554 U.S. at 628. Notwithstanding the right to possess a gun in the home for self-defense, courts, including Circuit Courts, have held that the government has a substantial interest in regulating the possession of guns in the home by those who would pose an undue risk, even beyond felons and the mentally ill. See, e.g., U.S. v. Seay, 620 F.3d 919, 925 (8th Cir. 2010), cert. denied, 131 S.Ct. 1027 (2011) (Approving bar on gun possession, even in the home, by drug abusers); Skoien, 614 F.3d at 641; U.S. v. Donovan, 410 Fed.Appx. 979, 981-82 (7th Cir. 2011); see also, D W Webster et al., Relationship between licensing, registration, and other gun sales laws and the source state of crime guns, 7 Inj. Prevention 184, 188 (2001); Hemenway, supra, 216 (recommending efficaciousness of gun licensing and registration from a public health perspective). States thus have a public safety interest in regulating firearms, including the adequate investigation and monitoring of licensees, allowing consideration of such factors as drug use, alcohol abuse, histories of domestic violence, and other factors which might disqualify one from gun licensure. Peterson, 2011 WL 843909, at *5. Here, the purposes of New York's handgun licensing procedures are "to insure that only persons of acceptable background and character are permitted to carry handguns and to provide a method for

33

reporting information on the identity of persons possessing weapons". Mahoney v. Lewis, 199 A.D.2d 734, 735 (3d Dep't 1993). Under this regulatory process, all persons granted permits in the State are subject to rigorous local monitoring to insure the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character appropriate for one entrusted with a dangerous instrument. See Bach, 408 F.3d at 81, 87.

Penal Law § 400.00(14) is substantially related to important government interests. New York does not ban guns, but provides for investigation into applicants' fitness for a license and some attendant fees. Licensing is a "local" process and requires investigation into an applicant's fitness. Bach, 408 F.3d at 81; Peterson, 2011 WL 843909, at *5; Osterweil v. Bartlett, 2011 WL 1983340, at *11. Fees charged are intended to and do "defray the cost of the investigation necessary" for the localities. Lederman v. N.Y. Police Dep't, 2011 WL 1343558 (N.Y. Sup. Ct. 2011). They are intended to help support localities throughout the State to cover the expenses associated with licensing. The State allowed New York City to set its own fees in response to a plea from the City that the costs of its investigation and administration were overwhelming and required a higher fee. See Connell Decl., Ex. F. The fee provision, by enabling localities to offset some of the costs associated with license investigations, is substantially relates to important government interest in gun licensing. See Osterweil, 2011 WL 1983340, at *11; Peterson, 2011 WL 843909, at *8-9. Thus the statute survives intermediate scrutiny.

## CONCLUSION

For the reasons set forth herein, it is respectfully submitted that this Court should issue an order:  (1) denying Plaintiffs' motion for summary judgment;  (2) granting the motion for summary judgment by Intervenor Attorney General Eric T. Schneiderman; (3) declaring that New York Penal Law § 400.00(14) does not violate the Second or Fourteenth Amendments; and (4) granting such other and further relief as the Court deems just, proper and appropriate.

Dated: New York, New York
    July 29, 2011

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the
 State of New York
Attorney for the State Defendants
By:

MONICA CONNELL
ANTHONY J. TOMARI
Assistant Attorneys General
MATTHEW LEVY
Legal Assistant
120 Broadway
New York, New York 10271
(212) 416-8965/553


MONICA CONNELL
ANTHONY J. TOMARI
Assistant Attorneys General
MATTHEW LEVY
Legal Assistant
Of Counsel