UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHUI W. KWONG; GEORGE GRECO; GLENN
HERMAN; NICK LIDAKIS; TIMOTHY S.
FUREY; DANIELA GRECO; NUNZIO CALCE;
SECOND AMENDMENT FOUNDATION, INC.;
and THE NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, INC.,

                       Plaintiffs,

        -against-

MICHAEL BLOOMBERG, in his Official
Capacity as Mayor of the City of New York; and
CITY OF NEW YORK,

                       Defendants.

        -and-

ATTORNEY GENERAL OF THE STATE OF
NEW YORK,

                       Intervenor.

No. 11 Civ. 2356 (JGK) (DCF)

ECF Case

**PLAINTIFFS' RESPONSE TO
INTERVENOR ATTORNEY GENERAL'S
COUNTER-STATEMENT OF
UNDISPUTED MATERIAL FACTS**

       Plaintiffs respond to the Statement of Undisputed Facts submitted by Intervenor Attorney

General of the State of New York (the "State") as follows:

1. New York State does not ban handguns, but requires them to be licensed.  Complaint
   ¶ 4; Penal Law § 265.00, § 400.00.

   RESPONSE:      Not disputed.

2. New York Penal Law provides for a number of different types of handgun licenses
   and sets forth the requirements for such licenses.  Complaint ¶¶ 60-62; Penal Law §
   400.00.

   RESPONSE:      Admitted.

3. Applications for gun licenses must be made to the "licensing officer" in the city or
   county where the applicant in the city or county where the applicant resides.  New
   York State licensing officers are judges or justices of a "court of record" except in

New York City and Nassau and Suffolk Counties, where the "licensing officer" is the Police Commissioner or Sheriff.  Penal Law § 265 (10).

RESPONSE:        While this description is not completely accurate, Plaintiffs do not dispute it for purposes of the present Motion and Cross-Motions.

4.  Every application is investigated by "the duly constituted police authorities" of the locality where such application is made.  Penal Law § 400.00 (4).

RESPONSE:        Not disputed.

5.  The investigation results are then reported to the licensing officer.  Penal Law § 400.00 (4) and (4-a).

RESPONSE:        Not disputed.

6.  If the application is granted, the approved application must be filed with the County Clerk or other designee and the New York State Police.  Penal Law § 400.00(5).

RESPONSE:        Not disputed.

7.  New York Penal Law § 400.00(14) provides that in New York City the City Council and in Nassau County the Board of Supervisors shall fix the fee to be charged for a license to carry or possess a pistol or revolver, and that elsewhere in the state, the county legislative body of each county will set a fee for each license to carry or possess a pistol or revolver of not less than three dollars nor more than ten dollars to be collected and paid into the county treasury.  Penal Law § 400.00(14).

RESPONSE:        Not disputed.

8.  The City Council for New York City enacted § 10-131 of the New York City Administrative Code establishing a license fee of $340 for New York City.  § 10-131 New York City Administrative Code § 10-131. Complaint ¶¶ 1, 8, 63, 66-69.

RESPONSE:        Not disputed.

9.  New York's current handgun law was first codified on May 25, 1911 and was known as the Sullivan Law.  See Connell Decl., Ex. B., 1911 N.Y. Laws Ch. 195.  Intended to curb the "scourge" of handgun violence that was then sweeping the state, particularly New York City, the Sullivan Law has regulated the possession and carrying of handguns in New York State for a century.  See Connell Decl., Ex. C.

RESPONSE:        Plaintiffs dispute the statement that the Sullivan Law was "Intended to curb the 'scourge' of handgun violence that was then sweeping the state, particularly New York City" and dispute the proposal to rely on New York Times articles to establish the intent of the State legislature.  Otherwise, not disputed.

10. The Sullivan Law has undergone amendment since it was first enacted.  In 1922, the Legislature amended § 1897 to include a fee provision which imposed a fee of fifty cents for each gun license.  See Connell Decl., Ex. D.

    RESPONSE:        Not disputed.

11. The 1922 amendment provided for a fee to help defray the costs incurred by the counties for administering the licensing programs.  See Connell Decl., Ex. D, p. 6.

    RESPONSE:        Not disputed.

12. In 1938, § 1897 was amended.  The fees for gun licensing were increased from 50 cents to not less than 50 cents and not more than $1.50, with the actual amount to be determined by the local legislature.  Such fees were charged to provide the county or City licensing officers with the necessary "provisions" in regard to gun licensing and were to be collected and deposited into the treasury of the county or City.  State Assemblyman J. Edward Conway wrote in support of the bill, noting in a March 26, 1938 letter, that "much additional clerical assistance" was required in regard to gun licensing, and that it has been found that the fifty cent fee "does not cover the actual expense of the administration of the pistol permit bureau."  See Connell Decl., Ex. E.

    RESPONSE:        Note disputed that the legislature made the referenced amendment in 1938, but the full quotation is as follows:

    Due to recent amendments in the pistol permit section of the Penal Law, much additional clerical assistance has been required and it has been found that in my county, the fee of fifty cents which is now paid by such licensees does not cover the actual expense of the administration of the pistol permit bureau.  This has necessitated an appropriation raised by general taxation to defray the additional cost.  In view of the fact that pistol permits issued up-state are good until revoked, it is unfair that the taxpayers should be compelled to attend any portion of the cost of issuing such licenses.  When one considers that a hunting and fishing license costs $2.50 annually, it is not too much to ask of a pistol permit licensee that he pay a sum not to exceed $1.50 for his license.  If the additional increase should result in the issuance of fewer licenses, that in itself would be an improvement in that it would take dangerous weapons from the hands of persons likely to be unreliable.

    See Connell Dec. (Doc. No. 25) ex. E, p. 5; Plaintiffs' 56.1 Stmt. (Doc. No. 15) ex. 16, p. 5.

13. In 1947, the law was amended to permit New York City to set its own fees, with the intention that licensing program would be "self-sustaining".  The legislative history demonstrates that the Legislature had received letters, including from the Mayor of the City of New York, William O'Dwyer, indicating that the then-current maximum fee of $1.50 was "inadequate to compensate for the administrative expense entailed in the issuance of such licenses".  The Mayor noted that before a license is issued, "the Police Department conducts an intensive investigation" to ensure that issuance of a

license would not jeopardize the public safety and welfare.  <u>See</u> Connell Decl., Ex. F, 1947 N.Y. Laws Ch. 147.

<u>RESPONSE:</u>        Denied.  New York City had the statutory power to set its own fees since 1938.  Not disputed that the "Bill Jacket" contains a letter from the Mayor of New York City with the referenced statements, but disputed that this letter represents statements by the "Legislature" or even by an individual State legislator.  Plaintiffs do not dispute the authenticity of the documents.

14. Since 1947, the New York City Council has been responsible for setting the fees for gun licenses in the City.  <u>See</u> Connell Decl., F.

<u>RESPONSE:</u>        Denied.  New York City had statutory power to set its own fees since 1938.

15. Subsequent amendments to the Penal Law similarly exempted Nassau County from the statutory cap when officials there complained that administering licenses was time-intensive and expensive and that the $5.00 fee then charged in Nassau County was insufficient to cover the costs of the licensing program.  <u>See</u> Connell Decl., Ex. G, 1973 N.Y. Laws Ch. 546.

<u>RESPONSE:</u>        Not disputed.

16. In 1984, the current fee range was established in an attempt to make the fee more closely approximate actual cost of administration which can, "in some cases", could be as high as $250 and to lessen the vast disparity in some counties between the cost of gun licensing and the fees collected.  <u>See</u> Connell Decl., Ex H.

<u>RESPONSE:</u>        Not disputed.

17. There is a compelling and well recognized public interest in regulating handguns and in screening handgun license applicant because firearm-related violence is a significant public health and safety concern.  <u>United States v. Salerno</u>, 481 U.S. 739, 748-50 (1987); <u>Schall v. Martin</u>, 467 U.S. 253, 264 (1984); <u>Heller v. District of Columbia</u> ("<u>Heller II</u>"), 698 F.Supp.2d 179, 190-91 (D. D.C. 2010); <u>U.S. v. Masciandaro</u>, 648 F.Supp.2d 779, 789 (E.D. Va. 2009); <u>U.S. v. Masciandaro</u>, 638 F.3d 458, 471 (4th Cir. 2011); <u>see also</u> <u>Peruta v. Cnty. of San Diego</u>, 758 F.Supp.2d 1106, 1117 (S.D. Cal. 2010).

<u>RESPONSE:</u>        This is a proposed conclusion of law, not an issue of fact, and Plaintiffs respectfully refer the Court to their legal briefings.

18. A vital part of this public interest is providing for public safety by handgun licensing regimes, including the need ensuring the performance of adequate investigation in connection with gun licenses.  <u>See, e.g.</u>, <u>Osterweil v. Bartlett</u>, 2011 WL 1983340 (N.D.N.Y. May 20, 2011); <u>Peterson v. LaCabe</u>, 2011 WL 843909, at *5 (D. Colo. March 8, 2011); <u>Com. v. Lee</u>, 2011 WL 710997, at *2 (Mass. Super. 2011); <u>Bach v. Pataki</u>, 408 F.3d 75, 92-93 (2d Cir. 2005); <u>Mahoney v. Lewis</u>, 199 A.D.2d 734, 735

(3d Dep't 1993); <u>Lederman v. N.Y. Police Dep't</u>, 2011 WL 1343558 (N.Y. Sup. Ct. 2011).  <u>See also</u> Complaint ¶ 8.

<u>RESPONSE:</u>        This is a proposed conclusion of law, not an issue of fact, and Plaintiffs respectfully refer the Court to their legal briefings.

19. Since 1960, more Americans have been murdered with guns than were killed in all the wars in the twentieth century combined.  <u>See</u> David Hemenway, Private Guns, Public Health, 45 (University of Michigan Press 2004).

<u>RESPONSE:</u>        The academic citation is not disputed, but the matter asserted in the citation is irrelevant and is inadmissible hearsay.

20. During the 1990s, firearms were used to kill more than ninety people and wound about three hundred more per day on average.  <u>See</u> Hemenway, <u>supra</u>, 1.

<u>RESPONSE:</u>        The academic citation is not disputed, but the matter asserted in the citation is irrelevant and is inadmissible hearsay.

21. In 2007, there were 18,361 criminal homicides, of which 69% were committed with guns, three quarters of those with handguns; emergency rooms treated nearly 50,000 nonfatal gunshot injuries; and there were over 300,000 assaults and robberies in which the perpetrator used a gun.  <u>See</u> http://www2.fbi.gov/ucr/cius2009/data/-table_19.html.

<u>RESPONSE:</u>        Not disputed, but irrelevant.

22. In New York State alone, 481 people were killed with firearms in 2009 (300 in New York City and 181 outside of New York City).  United States Center for Disease Control, <u>Nat'l Vital Statistics Report (2007)</u>; http://www.cdc.gov/NCHS/data/nvsr/-nvsr58/nvsr58_19.pdf; <u>see also</u>, <u>Murder: New York City</u>, N.Y. Times, <u>available at</u> http://projects.nytimes.com/crime/homicides/map (last visited July 28, 2011).

<u>RESPONSE:</u>        Not disputed, but irrelevant.

23. More than 75% of all gun-related killings involve a handgun.  Zimring & Hawkins, <u>Crime Is Not the Problem: Lethal Violence in America</u>, Chapters 1, 3 and 7; Zimring & Hawkins, <u>The Citizen's Guide to Gun Control, New York</u>, at Chapter 5, p. 38.

<u>RESPONSE:</u>        The academic citations are not disputed, but the matters asserted in these citations are irrelevant and are inadmissible hearsay.

24. The presence of guns in the home has a substantial impact on the rate of completed suicide attempts.  Empirical research demonstrates that having a gun in the home increases the risk of a suicide to between two to ten times of that in a home without a gun, not just in regard to the gun owner, but also to any spouse or children in the home.  <u>See</u> Matthew Miller and David Hemenway, <u>Guns and Suicide in the United States</u>, 359 New Eng. J. Med. 989, 989-991 (September 4, 2008).

RESPONSE:     The academic citation is not disputed, but the matter asserted in the citation is irrelevant and is inadmissible hearsay.

25. Of the 536 law enforcement officers who were feloniously killed in the United States between 2000 and 2009, 490 (91%) were with a firearm and 73 % of those were with a handgun.  See http://www2.fbi.gov/ucr/killed/2009/data/table_27.html.

RESPONSE:     Not disputed, but irrelevant.

26. On average, New York City processes 2,612 new handgun license applications and 9,522 renewal applications per year, many more than any other locality in the State by far, resulting in significant investigative and administrative costs.  See Declaration of James Sherman, Ex. B; Declaration of Andrew Lunetta, filed in support of the Motion for Summary Judgment by the City Defendants, ¶ 3.

RESPONSE:     Plaintiffs have not had the opportunity to conduct discovery and cannot assess the validity of these assertions.  To the extent these facts are outcome-dispositive, Plaintiffs are entitled to discovery.  Otherwise, not disputed.


Dated: New York, New York
       August 24, 2011

                              **DAVID JENSEN** PLLC


                              By: _____
                                  David D. Jensen, Esq.
                              708 Third Avenue, Sixth Floor
                              New York, New York  10017
                              Tel:  212.380.6615
                              Fax:  917.591.1318
                              david@djensenpllc.com
                              *Attorney for Plaintiffs*