UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

SHUI W. KWONG; GEORGE GRECO; GLENN
HERMAN; NICK LIDAKIS; TIMOTHY S. FUREY;
SECOND AMENDMENT FOUNDATION, INC.; and
THE NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, INC.,

                                                  Plaintiffs,

               -against-

MICHAEL BLOOMBERG, in his Official Capacity as
Mayor of the City of New York; CITY OF NEW YORK;
and ERIC SCHNEIDERMAN, in his Official Capacity as
Attorney General of the State of New York,

                                                 Defendants.

------------------------------------------------------------------ X

11 Civ. 2356 (JGK)
ECF Case

**CITY DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for City Defendants
100 Church Street, 5th Floor
New York, New York 10007
(212) 788-0758

October 4, 2011

GABRIEL TAUSSIG,
MICHELLE GOLDBERG-CAHN,
                  Of Counsel.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    POINT I

        ADMINISTRATIVE CODE § 10-131(a)(2) IS
        CONSTITUTIONAL ............................................................................................... 2

        A.  Under Well-Established Principles of Law, the
            License Fee is Constitutional ..................................................................... 2

        B.  Intermediate Scrutiny is the Appropriate Level
            of Review Applicable Here. However, the Fee
            Established in Admin. Code § 10-131(a)(2)
            Does Not Violate the Second Amendment
            Under Any Level of Review. ..................................................................... 9

    POINT II

        PLAINTIFFS DO NOT GENUINELY DISPUTE
        CITY DEFENDANTS' FACTS, THUS
        PLAINTIFFS' SUMMARY JUDGMENT
        MOTION MUST BE DENIED ............................................................................ 13

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                   **Pages**

729 Inc. v. Kenton County Fiscal Court,
    402 Fed. Appx. 131 (6th Cir. 2010)....................................................................................... 6

District of Columbia v. Heller,
    554 U.S. 571 (2008), – U.S. –, 130 S. Ct. 3020 (2010) ......................................................... 7, 9

Ezell v. City of Chicago,
    2011 U.S. App. LEXIS 14108 (7th Cir. July 6, 2011)........................................................ 11, 12

Forsyth County v. Nationalist Movement,
    505 U.S. 123 (1992)................................................................................................................ 5, 6

Gonzales v. Carhart,
    550 U.S. 124 (2007)............................................................................................................. 12, 13

Kachalsky v. Cacace,
    10 CV 5413, 2011 U.S. Dist. LEXIS 99837 (S.D.N.Y. Sept. 2, 2011) .......................... 9, 10, 11

Major League Baseball Props, Inc. v. Salvino,
    542 F.3d 290 (2d Cir. 2007)................................................................................................ 14, 15

McDonald v City of Chicago,
    – U.S. –, 130 S. Ct. 3020 (2010).............................................................................................. 7, 8

Mobile Sign, Inc. v. Town of Brookhaven,
    670 F. Supp. 68 (E.D.N.Y. 1987) ............................................................................................... 7

Murdock v. Pennsylvania,
    319 U.S. 105, 113-14 (1943) ........................................................................................... 4, 5, 6, 7

National Awareness Foundation v. Abrams,
    50 F.3d 1159 (2d Cir. 1995)....................................................................................................... 6

Nordyke v. King,
    644 F.3d 776, 2011 U.S. App. LEXIS 8906 (9th Cir. May 2, 2011)................................. 12, 13

Osterweil v. Bartlett,
    2011 U.S. Dist. LEXIS 54196 (N.D.N.Y. May 20, 2011)....................................................... 10

Planned Parenthood v. Casey,
    505 U.S. 833, 893-94 (1992) ............................................................................................. 12, 13

Scott v. Harris,
    550 U.S. 372 (2007)................................................................................................................. 14

**Cases**                                                                                                                   **Pages**

United States v. Chester,
   628 F.3d 673 (4th Cir. 2010) .................................................................................................. 9

United States v. Marzzarella,
   614 F.3d 85 (3d Cir. 2010)................................................................................................. 9, 10

United States v. Oppedisano,
   2010 U.S. Dist. LEXIS 127094 (E.D.N.Y. Nov. 30, 2010)...................................................... 10

United States v. Reese,
   627 F.3d 792 (10th Cir. 2010),
   cert. denied, 131 S. Ct. 2476; 2011 U.S. LEXIS 3768 (May 16, 2011) ..................................... 9

United States v. Skoien,
   614 F.3d 638 (7th Cir. 2010),
   cert. denied, 131 S. Ct. 1674, 2011 U.S. LEXIS 2138 (Mar. 21, 2011) ..................................... 9

**Statutes**

Fed. R. Civ. P. 56 (a) and (b).................................................................................................... 14

Fed. R. Civ. P. 56(c) ................................................................................................................. 14

Fed. R. Civ. P. 56(e) ................................................................................................................. 15

Local Rule 56.1 ................................................................................................................... 14, 15

Local Rule 56.1(d) ..................................................................................................................... 15

N.Y. Penal Law § 400.00(14)...................................................................................................... 3

N.Y.C. Admin. Code § 10-131(a)(2) .............................................................................. 2, 3, 9, 11

## CITY DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants, Michael Bloomberg in his official capacity as Mayor of the City of New York, and the City of New York (collectively "City defendants"), submit this reply memorandum of law in further support of their cross-motion for summary judgment and in response to the arguments raised in Plaintiffs' Reply in Support of Summary Judgment and Opposition to the City and State's Cross-Motions, dated August 24, 2011 ("Pls Reply Mem.").

### PRELIMINARY STATEMENT

Plaintiffs challenge the license fee charged by the New York City Police Department License Division for premises residence firearms licenses arguing that because the Second Amendment affords the right to bear arms in the home for the purpose of self-defense, City defendants cannot charge its fee that serves to defray the costs associated with the issuance of premises residence licenses. Plaintiffs state that they are not attacking the ability of the City to charge a fee, however, unless the fee is truly what plaintiffs believe to be "nominal," then plaintiffs do not believe that they are required to pay any such fee. Moreover, while plaintiffs claim that they are not challenging the City's right to conduct an investigation into an applicants' qualification for a firearms license (Cmplt, ¶ 8), they apparently take issue with costs thereto.

Plaintiffs urge this Court to reject the majority of courts who have reviewed Second Amendment challenges to regulations applying intermediate scrutiny or the substantial burden analysis and to apply strict scrutiny to the challenged fee statute, despite that the only cases that come anywhere near that high level of review are those where the challenged ordinance served as a <u>prohibition</u> on the right protected by the Second Amendment. Here, the licensing fee at issue is simply used to partially cover the costs associated with licensing people who seek to possess a firearm in their home and is not a prohibition. And, although the

organizational plaintiffs claim that some of their members have complained about the fee, none of the plaintiffs have presented any evidence to establish that the challenged fee has prevented anyone from exercising their Second Amendment right.

Now that plaintiffs have run to the Court seeking summary judgment without taking discovery, plaintiffs ask that this Court not attach any weight to City defendants' undisputed facts which reflect that the statutory fee is less than the costs associated with licensing persons who wish to possess firearms weapons in their homes, and, instead "deny the motions so that discovery can take place" on the adequacy of the costs (Pls Reply Mem. at 22). Plaintiffs seek summary judgment, unless, the Court is going to consider City defendants' uncontroverted evidence. Plaintiffs' baldly assert that the fee charged does not cover the costs of the licenses (Cmplt, ¶¶ 1, 67), however, the evidence demonstrates otherwise. Notwithstanding plaintiffs' fatal blow to their own motion, plaintiffs offer no evidence or reasoning for this Court to take issue with City defendants' undisputed facts.

## ARGUMENT

### POINT I

### ADMINISTRATIVE CODE § 10-131(a)(2) IS CONSTITUTIONAL

As set forth more extensively in City Defendants' Memorandum of Law in Support of their Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, dated July 28, 2011 ("City Defs Mem."), the fee set forth in Admin. Code § 10-131(a)(2) is constitutional under any level of review.

**A.    Under Well-Established Principles of Law, the License Fee is Constitutional**

As set forth in City defendants' opening papers, it is well-established that a license fee passes constitutional muster, as long as the fee is used to defray the costs associated

with the license. City Defs Mem. at Point I(B). Here, the challenged fee is simply a regulation that serves to defray regulatory costs as supported by the City's cost analysis submitted in the prior submissions and by the over sixty year legislative history of the amendment to Penal Law § 400.00(14) and Admin. Code § 10-131(a)(2).[1]

Plaintiffs' however, urge this Court to read an additional requirement to that well-established principle by arguing that the "fees must be nominal *and* they must serve the purpose of defraying attendant costs." Pls Reply Mem. at 16 (emphasis in original). As City defendants previously argued, the cases discuss nominal fees as being those that defray the administrative costs associated with issuing permits for the protected activity.[2] Nothing in those cases suggests that "defray" and "nominal" are two separate standards. Indeed, in Murdock v. Pennsylvania, when the Supreme Court struck down a license tax, it did so because the license tax was "not a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in

---

[1] It is clear from the legislative history to Penal Law § 400.00(14) that the principle reason for the amendment was to allow the City to recoup administrative expenses incurred in connection with the City's investigation of applicants for firearms licenses. See Goldberg-Cahn Dec., dated July 29, 2011, Ex. "A" at 7-8; see also id. at 2-3. Plaintiffs point to additional reasons articulated in the Sponsor's Memorandum (Pls Reply Mem. at 4), however, this ignores the over sixty year legislative history of the amendments to the City's gun fees — including, significantly, the law that established the fee challenged by plaintiffs (Local Law 37 of 2004) — all making clear that the purpose of the fees is to defray the costs associated with the license. See Goldberg-Cahn Dec., Ex. "K."

[2] Plaintiffs make much of the fact that the current fee is less than the current administrative costs. See Pls Reply Mem. at 5. However, the fact the City has made a policy determination not to seek complete recompense for the costs is of no moment.

3

question."[3] 319 U.S. 105, 113-14 (1943). Nothing in Murdock suggests that a fee can only pass constitutional muster if it is both "nominal" <u>and</u> used to "defray costs." Nominal, as used in Murdock is defined as a fee that serves to defray costs. Id. Plaintiffs' attempt to distinguish Murdock fails. Pls Reply Mem. at 18. Plaintiffs overlook the fact that the fee in Murdock was found to be a "flat license tax" imposed for the sole purpose of generating revenue, rather than a regulatory fee established to defray expenses. Murdock explicitly provides that fees that are regulatory measures, as opposed to taxes, are constitutional. While plaintiffs ignore this distinction between a tax and a fee, the Court relied upon it as "the constitutional difference." 319 U.S. at 113-14, n. 8.[4] The issue in Murdock was activity that fell <u>outside</u> the police powers of the state, whereas here, the activity at issue – the possession of deadly weapons – falls squarely within the police powers of the City.

Plaintiffs' attempt to distinguish Murdock from Cox must be rejected. Pls Reply Mem. at 16-19. Plaintiffs assert that "Murdock also says that States cannot lay taxes on the basic ability to exercise a constitutional right. Cox stands only for the (much broader) proposition that a fee assessed for using public streets and venues for protected conduct can seek to recover

---

[3] In a quote that plaintiffs inexplicably omit from their quotation from Murdock (Pls Reply Mem. at 18), the Court explained. The Court notes that:

> "[w]hile a state may not exact a license tax for the privilege of carrying on interstate commerce, it may, for example, exact a fee to defray the cost of purely local regulations in spite of the fact that those regulations incidentally affect commerce. So long as they do not impede on the free flow of commerce and are not made the subject of regulation by Congress they are not forbidden." Id. (citations omitted).

[4] The Supreme Court explicitly noted that the ordinance in Murdock "is not directed to the problems with which the police power of the state is free to deal." 319 U.S. at 116-17.

4

attendant costs." Id. at 18. However, as set forth above, the distinction between the two cases is that the ordinance in Murdock was a tax, while the ordinance in Cox was a regulatory fee. There is no basis for limiting the holding in Cox as upholding the constitutionality of fees only if they serve to defray costs related to the use of public streets and venues. Indeed, the fee challenged in Murdock involved public activity as well.

Plaintiffs' suggestion that Forsyth County v. Nationalist Movement, 505 U.S. 123 (1992), stands for the proposition that there is a separate requirement for a permit fee to be nominal" and used to defray costs, is without basis.[5] Pls Reply Mem. at 21-22. As the Supreme Court stated in Forsyth County:

> In distinguishing the case from Cox, where the Court upheld a permit fee, the Court stated: "And the fee is not a nominal one, imposed as a regulatory measure and calculated to defray the expense of protecting those on the streets and at home against the abuses of solicitors." 319 U.S. at 116. This sentence does not mean that an invalid fee can be saved if it is nominal, or that only nominal charges are constitutionally permissible. It reflects merely one distinction between the facts in Murdock and those in Cox.

505 U.S. at 136-37 (emphasis added).[6] The Court then noted that "[t]he tax at issue in Murdock was invalid because it was unrelated to any legitimate state interest, not because it was of a particular size." Id. at 137. The Supreme Court struck down the ordinance in Forsyth County

---

[5] Contrary to plaintiffs' statements, City defendants did not "fail[] to discuss the most recent Supreme Court decision to address the issue" in Forsyth County. Pls Reply Mem. Mem. at 21. In fact, City defendants specifically address Forsyth County in Point II(B) of its opening memo.

[6] In reviewing the fee, the Court applied intermediate scrutiny examining whether the permit fee was sufficient and narrowly tailored depending on the amount of discretion vested in the administrator. Forsyth County, 505 U.S. at 130-133. Although Forsyth was a 5-4 decision, the Court unanimously rejected the theory that plaintiffs now seek to revive – that the fee must be small to pass constitutional muster.

5

because it granted the administrator too much discretion to determine not only the amount of the fee to be charged, but, whether to charge a license fee at all. The Court found the ordinance unconstitutional because "such discretion has the potential for becoming a means of suppressing a particular point of view." Id. at 130. The Court made clear that Murdock did not stand for the proposition that a fee must be small or "nominal," to pass constitutional muster. Id.; see also id. at 138-140 (Rehnquist, J., dissenting on other grounds)("The use of the word 'nominal' in *Murdock* was thus unfortunate, as it represented a mistaken characterization of the fee statute in *Cox*. . . I therefore would explicitly hold that the Constitution does not limit a parade license fee to a nominal amount.").

Plaintiffs' strained reading of the Second Circuit's decision in National Awareness Fdn. v. Abrams, 50 F.3d 1159 (2d Cir. 1995), as failing to uphold a fee that serves to defray costs as nominal, is unavailing. Pls. Reply at 18-19. The Second Circuit did not separately analyze whether the $80 annual registration fee was nominal and serve to defray the costs. In National Awareness, the Second Circuit concluded that the $80 annual fee is a "nominal fee that serves the legitimate purpose of defraying the expenses incident to the administration and enforcement of" the statute. Id. at 1166 (emphasis added). Although the District Court did separately analyze whether the fee was nominal and covered costs, the Second Circuit did not do so, and plaintiffs' attempt to argue that the nominal issue was not before it fails. As set forth by City Defendants and the State, the Courts have upheld fees that are quite large,[7] finding that they cover the attendant costs. City Defs. Mem., 21-22; State Mem., 24-25.

---

[7] A $3,000 license fee was upheld in 729, Inc. v. Kenton County Fiscal Court, 402 Fed. Appx. 131 (6th Cir. 2010).

6

Regardless, plaintiffs' insistence that the permitting fee cases and standards in the First Amendment context are not applicable to plaintiffs' Second Amendment challenge simply because some of the First Amendment cases involve use of public space, is untenable. See Pls Reply Mem. at 16-20. Plaintiffs contend that the fee cases are inapplicable because they do "not concern fees imposed directly on an individual's basic ability to engaged in an enumerated, fundamental right," rather, they concern fees imposed on the ability to engage in protected conduct in a commercial manner or in public places that were provided at public expense. Id. at 19. Nothing in those cases suggests that the fees were permitted only because they involved use of public space or a public benefit. See, e.g., Murdock, 319 U.S. at 114, n. 8 ("While a state may not exact a license tax for the privilege of carrying on interstate commerce, it may, for example, exact a fee to defray the cost of purely local regulations in spite of the fact that those regulations incidentally affect commerce.").[8]

Plaintiffs' argument completely ignores that fact that the Supreme Court in District of Columbia v. Heller, 554 U.S. 571 (2008), and McDonald v City of Chicago, – U.S. – 130 S. Ct. 3020 (2010), acknowledged the importance of safety and order in connection with the use and possession of firearms, even for the purpose of self-defense in one's home. In Heller, the Supreme Court stated "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill" and that this "list does not purport to be exhaustive." 554 U.S. at 626-27, n.26; see also McDonald, 130 S. Ct. at 3047

---

[8] Nor do the fee cases hold that fees imposed on the exercise of First Amendment rights are constitutional if designed to cover administrative costs simply because the plaintiffs therein sought to engage in commercial speech (Pls. Reply Mem. at 20). See, e.g., Mobile Sign, Inc. v. Town of Brookhaven, 670 F. Supp. 68, 74 (E.D.N.Y. 1987).

7

(citations omitted). McDonald further reiterated the notion that "state and local experimentation with reasonable firearms regulation, . . . will continue under the Second Amendment." 130 S. Ct. at 3046. Thus, Heller and McDonald plainly provide that regulations that take into account the government's public safety concerns in connection with the exercise of individuals' Second Amendment rights are valid. Inasmuch as the Court has acknowledged the importance of safety in permit regulations in the context of allowing people to exercise their First Amendment rights, so too has the Court acknowledged the government's valid safety concerns in connection with the exercise of individual's Second Amendment rights. Contrary to plaintiffs' argument, the issue is not that the permit fees in the First Amendment cases are valid because they are used to pay for the use of the Central Park Bandshell (Pls Reply Mem. at 1), but that they are valid because of the costs incurred by the government to protect the safety of the public in the exercise of one's First Amendment rights at the Bandshell. The Courts have consistently found that the government has the ability to recoup the costs associated with protecting the public safety in the context of the exercise of one's First Amendment rights – including the costs for processing the permit, as well as the costs associated with policing events. Plaintiffs repeatedly state that they are not arguing that there should not be government regulation in connection with the exercise of Second Amendment rights. See Cmplt, ¶ 8; Pls Reply Mem. at 21. Thus, inasmuch as the City can charge for the expenses incurred by the City for the exercise of First Amendment rights, so too, can the City recoup the costs incurred by the City in protecting the public safety in connection with the exercise of Second Amendment rights.

Moreover, while the regulatory fee cases in the First Amendment context provide support for the City's right to impose a fee for premises residence firearms permits, it is significant to note one key distinction between the First Amendment activity and the right

protected by the Second Amendment. In the First Amendment context, there may not be an investigation into, or even a consideration of, the identity of the speaker. In the Second Amendment context, however, such a screening role is necessary given the public safety concerns specific to firearms and has explicitly been recognized by the court in their recognition that governments may prohibit certain categories of people (such as felons, mentally ill, and others) from exercising the right — indeed, they don't have the right at all. See, e.g., Heller, 554 U.S. at 626-27 (stating no right to have gun in home for felons and mentally ill); U.S. v. Reese, 627 F.3d 792 (10th Cir. 2010), cert. denied, 131 S. Ct. 2476; 2011 U.S. LEXIS 3768 (May 16, 2011)(upholding law prohibiting gun possession by persons with outstanding orders of protection); U.S. v. Skoien, 614 F.3d 638 (7th Cir. 2010)(en banc), cert. denied, 131 S. Ct. 1674, 2011 U.S. LEXIS 2138 (Mar. 21, 2011)(upholding law prohibiting the possession of firearms by domestic violence misdemeanants); see also Kachalsky v. Cacace, 10 CV 5413, 2011 U.S. Dist. LEXIS 99837, **76-77 (S.D.N.Y. Sept. 2, 2011)(referring to cases upholding statutes that "permanently disarm[] . . . entire category[ies] of persons," and "*ipso facto* ban possession by such persons in their homes for the purpose of self-defense"). There are no First Amendment cases that authorize the government to deny permits to certain categories of people wholesale.

**B.     Intermediate Scrutiny is the Appropriate Level of Review Applicable Here. However, the Fee Established in Admin. Code § 10-131(a)(2) Does Not Violate the Second Amendment Under Any Level of Review.**

As set forth above, in the context of First Amendment fee cases, the standard applied is intermediate scrutiny – i.e., whether the license fee is used to defray costs and is narrowly tailored to the government's interest in protecting the public. Similarly, the majority of Courts to address Second Amendment challenges to regulations of the possession and use of handguns have applied intermediate scrutiny. See, e.g., Reese, 627 F.3d at 800; Skoien, 614 F.3d 638; U.S. v. Chester, 628 F.3d 673, 677 (4th Cir. 2010); U.S. v. Marzzarella, 614 F.3d 85,

9

97 (3d Cir. 2010); Osterweil v. Bartlett, 2011 U.S. Dist. LEXIS 54196, **31-32 (N.D.N.Y. May 20, 2011); U.S. v. Oppedisano, 2010 U.S. Dist. LEXIS 127094 (E.D.N.Y. Nov. 30, 2010).

Recently, Judge Seibel of this Court applied intermediate scrutiny in a challenge to the requirement in the New York Penal Law that a license to possess and carry a concealed firearm may only be issued to an applicant establishing "proper cause" for the issuance thereof.[9] Kachalsky, 2011 U.S. Dist. LEXIS 99837. Notably, before applying any level of scrutiny, Judge Seibel first found that plaintiffs' challenge to the regulations for carry permits fall outside the ambit of the Second Amendment, thus, no review was warranted. Kachalsky, 2011 U.S. Dist. LEXIS 99837, at **76-82. City Defendants recognize that the challenge in Kachalsky was to the requirements for concealed weapon permits, rather than a license to possess and use a firearm in the home. However, to the extent that the court examined the tests applied to Second Amendment cases, as well as recognized that laws that regulate, rather than prohibit the exercise of the right, are valid as long as they are narrowly tailored to achieve an important government objective, this decision is instructive in determining that intermediate scrutiny is the proper standard to apply to the instant action. See id. at **72-73, 91.[10]

---

[9] Today, upon finalizing this brief, the D.C. Circuit issued a 97 page decision applying intermediate scrutiny to D.C.'s registration requirements and a ban on assault weapons in Heller v. D.C., 10-7036 (D.C. Cir. Oct. 4, 2011). City defendants respectfully reserve the right to more fully brief the import of this exhaustive and lengthy decision in the future or at argument.

[10] Judge Seibel held:
> ... [T]o the extent that Section 400.00(2)(f) overlaps at all with the Second Amendment right as recognized in Heller, it decidedly does not overlap to the same extent as Gun Control Act provisions that ban certain categories of individuals from both in-home possession and public carry, and thus it may plausibly be argued that a more lenient [than intermediate scrutiny] standard is warranted here than in those cases.

Continued...

Contrary to plaintiffs' contentions, strict scrutiny is not the proper level of review here because the challenged fee statute does not prohibit plaintiffs' ability to exercise their Second Amendment rights. Although the fee provision clearly requires the payment of monies to the City for the costs associated with the issuance of a Premises Residence handgun permit, Admin. Code § 10-131(a)(2) is not a prohibition on the exercise of Second Amendment rights. And, plaintiffs offer no evidence to establish that the fee is a prohibition.

Plaintiffs' reliance on Ezell v. City of Chicago, 2011 U.S. App. LEXIS 14108 (7th Cir. July 6, 2011), is misplaced. Pls Reply Mem. at 12-13. Even the Ezell court stopped short of strict scrutiny in determining the standard of review in the context of an absolute prohibition; not a regulation for a fee. The court puts great weight on the distinction between regulatory measures and complete prohibitions. In listing principles from the First Amendment doctrine, the Seventh Circuit in Ezell said: "... laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified. How much more easily depends on the relative severity of the burden and its proximity to the core of the right." 2011 U.S. App. LEXIS 14108, at *59 (emphasis added). Unlike the ban on firing ranges which made compliance with the statute impossible within city limits, the fee in Admin. Code § 10-131(a)(2) is a purely regulatory measure.[11] The permit fee does not prevent people from possessing firearms. Rather,

---

Kachalsky, 2011 U.S. Dist. LEXIS 99837, at *91.

[11] In rejecting the historical precedents proposed by the City of Chicago, the court stated:

> In short, these laws were merely *regulatory* measures, distinguishable from the City's absolute *prohibition* on firing ranges. [citing Heller, 554 U.S. at 632] (founding-era statute that "restricted the firing of guns within the city limits to at least some degree" did not support the District of Columbia's "general[]"

Continued...

the fee facilitates the necessary investigation for licenses to implement the prohibitions that the Supreme Court has stated are constitutional.

Although plaintiffs admit that "the courts apply intermediate scrutiny to laws that *regulate* the keeping and bearing of arms in a manner that does not *substantially* interfere with its exercise by law-abiding citizens," plaintiffs do not argue and fail to support any assertion that the challenged fee "substantially" burdens or interferes with the exercise of the Second Amendment right. Pls Reply Mem. at 29 (emphasis in original). Plaintiffs fail to offer any evidence to establish that the fee prevents anyone from exercising their rights, other than providing declarations from the organizational plaintiffs stating that some members of their organizations "have complained" about the fee (Pls. Counter 56.1 Statement ¶¶ 1, 5), and that the fee is higher than that in other U.S. jurisdictions (Pls Reply Mem. at 3).

Similarly, applying the substantial burden framework, plaintiffs utterly fail to establish how the fee statute substantially burdens their Second Amendment right. As explained in City Defendants' opening brief, the Court of Appeals for the Ninth Circuit applied the "substantial burden" test to a Second Amendment challenge in Nordyke v. King, 644 F.3d 776, 2011 U.S. App. LEXIS 8906, *5 (9th Cir. May 2, 2011). See City Defs Mem. at 29-31. City defendants previously argued (City Defs. Mem. at 30) that regulations that had the "effect of increasing the cost or decreasing the availability" of a fundamental right, have been upheld. Planned Parenthood v. Casey, 505 U.S. 833, 874, 893-94 (1992); see also Gonzales v. Carhart, 550 U.S. 124, 146 (2007); Nordyke, 2011 U.S. App. LEXIS 8906, at *21. Plaintiffs

---

        prohibit[ion] on the possession of handguns"). These "time, place, and manner" regulations do not support the City's position that target practice is categorically unprotected."

Ezell, 2011 U.S. App. LEXIS 14108, at **50-51.

acknowledge that the "substantial burden" test "may provide a useful framework for analyzing" the challenged fee, however, plaintiffs fail to articulate how the fee is "prohibitive" or imposes a "substantial burden" on plaintiffs' Second Amendment right (Pls Reply Mem. at 16). Nor do plaintiffs argue that the holdings of Planned Parenthood v. Casey and Carhart are not applicable herein. Thus, it has been found that regulations that make it more expensive to exercise a fundamental right do not necessarily impose an undue burden on the right. Id.[12]

## POINT II

**PLAINTIFFS DO NOT GENUINELY DISPUTE CITY DEFENDANTS' FACTS, THUS PLAINTIFFS' SUMMARY JUDGMENT MOTION MUST BE DENIED.**

Incredibly, despite arguing that the challenged fee is not used to defray City defendants' costs associated with issuing Premises Residence handgun licenses, plaintiffs' moved for summary judgment on this claim putting no evidence in support of this argument into the record. Now, in response to City defendants' submissions, plaintiffs argue "[i]f the Court concludes that the permissibility of the $340 fee turns (only) on whether the City adequately documented its claimed attendant costs, then the Court should deny the motions so that discovery can take place." Pls Reply Mem. at 22 (emphasis added).[13] However, plaintiffs fail to account for the fact that they have not disputed any of City defendants' evidence in support of the costs

---

[12] Heeding this Court's comments to separate the briefing so that the Court is not reading overlapping arguments from the City and State, City defendants respectfully refer the Court to the arguments set forth in Point II of State-Intervenor's Memo and Point II of the State's Reply Memo, and adopt those arguments as if more fully set forth herein.

[13] Plaintiffs apparently recognize because they have offered no facts to dispute City defendants' user cost analyses, their motion for summary judgment must be denied. Pls Reply Mem. at 22.

for the fee. Moreover, plaintiffs fail to explain why they chose to forego discovery on the City's facts, even though City defendants provided plaintiffs' counsel with cost analyses prior to plaintiffs' moving for summary judgment on this very issue. See Goldberg-Cahn Dec., ¶ 2. Thus, the issue of whether the $340 licensing fee serves to defray the costs of processing applications for Premises Residence licenses ($977.16 for the issuance; $346.92 for renewal) is not genuinely disputed.

In response to City defendants' 56.1 Statement, plaintiffs state "Plaintiffs have not had the opportunity to conduct discovery and cannot assess the validity of these assertions. To the extent these facts are outcome dispositive, Plaintiffs are entitled to discovery. Otherwise, not disputed." Pls' Responses to City Defs' 56.1 Statement ("Pls. 56.1 Responses"), at ¶¶ 17-23, 48-53, 60-62; Supplemental Declaration of David Jensen, ¶¶ 5-6; Pls. Reply at 22. It is improper in response to a summary judgment motion to argue that only if the Court deems the issue to have import, then it should deny the motion, despite that plaintiffs have not genuinely disputed any of City defendants' facts. Local Rule 56.1(d) provides that: "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Thus, plaintiffs' responses to City defendants' Rule 56.1 Statement are improper and the facts set forth therein shall be deemed admitted. It is undisputed that the cost of issuing a premises residence license is $977.16, the cost of renewal is $346.92, and the $340 fee is used to defray those costs. See City Defs Mem. at 11-13. Absent a genuine dispute of material fact, plaintiffs' summary judgment motion on the sufficiency of City defendants' costs must be denied. See Scott v. Harris, 550 U.S. 372, 380-381 (2007); Major League Baseball Props, Inc. v. Salvino, 542 F.3d 290, 306 (2d Cir. 2007)("[o]n a motion for

14

summary judgment, once the moving party has proffered facts to show that there is no genuine issue as to any material fact and that that party is entitled to judgment as a matter of law, "the opposing party must present 'specific facts showing [that] there is a genuine issue for trial.'" (internal quotations omitted)(citing Fed. R. Civ. P. 56(e)). Similarly, City defendants' cross-motion for summary judgment on this issue should be granted.[14]

## CONCLUSION

For the reasons set forth above and in City defendants' prior submissions, this Court should grant City defendants' cross-motion for summary judgment in its entirety, and deny plaintiffs' motion for summary judgment, together with such other and further relief as this Court deems just and proper.

Dated:    New York, New York
          October 4, 2011

                MICHAEL A. CARDOZO
                Corporation Counsel of the City of New York
                Attorney for City Defendants
                100 Church Street
                New York, New York 10007
                Email: migoldbe@law.nyc.gov
                (212) 788-0758

By: _____
                MICHELLE GOLDBERG-CAHN
                Assistant Corporation Counsel

---

[14] It appears plaintiffs have abandoned their argument that the license fees are not used to defray costs because they are deposited into the Police Pension Fund. City defendants demonstrated that the license fees are deposited in the City's General Fund. See City Defs Mem. at 9-10, 19-20. Plaintiffs do not dispute these facts. See Pls 56.1 Responses ¶¶ 55-59, 72-73.