UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
Shui W. Kwong, et al.,                          :        Civil Action Number:
                                                :        11 cv 2356
                     Plaintiffs,                :
                                                :        (Hon. John G. Koeltl)
              -against-                         :
                                                :
Michael Bloomberg, et al.,                      :
                                                :
                     Defendants.                :
-----------------------------------------------------X

## REPLY MEMORANDUM OF LAW BY INTERVENOR NEW YORK ATTORNEY GENERAL ERIC T. SCHNEIDERMAN IN FURTHER SUPPORT OF INTERVENOR'S CROSS-MOTION FOR SUMMARY JUDGMENT.

ERIC T. SCHNEIDERMAN
Attorney General of the
 State of New York
Intervenor
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8553

MONICA CONNELL
ANTHONY J. TOMARI
 Assistant Attorneys General
MALERIE MA
 Legal Assistant
 Of Counsel

# TABLE OF CONTENTS

                                                                                    Page

TABLE OF AUTHORITIES ....................................................................................... ii

Preliminary Statement...................................................................................................... 1

POINT I  -  PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE................................ 2

A.    Plaintiffs' Equal Protection Claim is Not Justiciable Because There is No
      "Live Case or Controversy" as Against Penal Law § 400.00(14)........................ 2

B.    Plaintiffs Lack Standing to Pursue Their Claims. ................................................ 3

      1.   The Standing Requirements of Article III Cannot Be
           "Waived" by Plaintiffs ................................................................................... 3

      2.   SAF and NYSRPA Lack Both Organizational and
           Representational Standing ............................................................................... 5

POINT II  -  PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS ......................... 6

A.    Plaintiffs Are Wrong When They Argue That a Gun License Fee
      May Only Be Nominal......................................................................................... 7

B.    Plaintiffs' Speculation About Improper Legislative Intent Cannot Serve as
      a Basis to Strike Penal Law § 400.00(14)........................................................... 9

C.    Plaintiffs Have Failed to Identify Any Authority For the Application
      of Strict Scrutiny to Their Equal Protection Claim............................................ 11

D.    Plaintiffs' Misapprehend the Application of First Amendment Jurisprudence
      in the Second Amendment Context. .................................................................... 14

E.    Plaintiffs Have Not Shown that City Residents Are Similarly Situated
      to Other New Yorkers for This Purpose or that Geographic Distinctions
      in the Law Are Subject to Strict Scrutiny .......................................................... 16

F.    Plaintiffs' Arguments Relating to Gun License Residency
      Requirements Are Frivolous................................................................................ 17

G.    The Statute Survives Scrutiny............................................................................. 18

CONCLUSION.................................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Cases** **Page**

729, Inc. v. Kenton Cnty. Fiscal Court,
  402 Fed. Appx. 131 (6th Cir. 2010).......................................................................... 8

Aguayo v. Richardson,
  473 F.2d 1090 (2d Cir.1973), cert. denied, 414 U.S. 1146 (1974) ........................... 5

Bach v. Pataki,
  289 F. Supp.2d 217 (N.D.N.Y. 2003), aff'd 408 F.3d 75 (2d Cir. 2005), cert.
  denied, 546 U.S. 1174 (2006), overruled on other grounds by McDonald,
  130 S.Ct. at 3050..................................................................................................... 17

Burdick v. Takushi,
  504 U.S. 428 (1992)................................................................................................. 17

CFCU Comm. Credit Union v. Hayward,
  552 F.3d 253 (2d Cir. 2009)..................................................................................... 10

City of Cleburne v. Cleburne Living Ctr.,
  473 U.S. 432 (1985)................................................................................................... 7

City of Los Angeles v. Lyons,
  461 U.S. 95 (1983)..................................................................................................... 4

Clingman v. Beaver,
  544 U.S. 581 (2005)................................................................................................. 17

Cox v. New Hampshire,
  312 U.S. 569 (1941).............................................................................................. 7, 8

District of Columbia v. Heller,
  554 U.S. 570 (2008).............................................................................................. 9, 14

Ezell v. City of Chicago,
  2011 WL 2623511 (7th Cir. July 6, 2011)........................................................... 13, 15

Florida East Coast Railway v. Martinez,
  761 F.Supp. 782 (M.D. Fla. 1991)............................................................................. 3

Fried v. Danaher,
  46 Ill.2d 475 (Ill. 1970), app. dism. 402 U.S. 902 (1971) ...................................... 17

FW/PBS. Inc. v. City of Dallas,
  493 U.S. 215 (1990)................................................................................................... 5

Gannett Satellite Info. Network, Inc. v. Metro. Transp. Auth.,
    745 F.2d 767 (2d Cir. 1984)...................................................................................... 8

Harris v. Bush,
    106 F.Supp. 2d 1272 (N.D. Fla. 2000)........................................................................ 3

Havens Realty Corp. v. Coleman,
    455 U.S. 363 (1982)................................................................................................... 6

Heller v. District of Columbia ("Heller II"),
    698 F.Supp.2d 179 (D.D.C. 2010)................................................................. 9, 11, 14

Illinois State Bd. of Elections v. Socialist Workers Party,
    440 U.S. 173 (1979)........................................................................................... 13, 17

In re G. & A. Books, Inc.,
    770 F.2d 288 (2d Cir. 1985).................................................................................... 10

Justice v. Town of Cicero,
    577 F.3d 768 (7th Cir. 2009), cert. den'd, 130 S.Ct. 3410 (2010) ...................... 9, 14

Kachalsky v. Cacace,
    10 cv. 5413, 2011 WL 3962550, 11 (S.D.N.Y. 2011)............................ 6, 12, 14, 15

League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors,
    737 F.2d 155 (2d Cir.1984)....................................................................................... 5

Lewis v. Casey,
    518 U.S. 343 (1996).................................................................................................. 4

Los Angeles Cnty. Bar Ass'n v. Eu,
    979 F.2d 697 (9th Cir.1992) .................................................................................... 16

Lowery v. United States,
    3 A.3d 1169 (D.C. 2010) ................................................................................. .......... 14

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992).................................................................................................. 5

Manes v. Goldin,
    400 F.Supp. 23 (E.D.N.Y. 1975), aff'd, 423 U.S. 1068 (1976) ............................... 16

Mastrovincenzo v. City of New York,
    435 F.3d 78 (2d Cir. 2006)....................................................................................... 8

McDonald v. City of Chicago, Ill.,
    _U.S._, 130 S.Ct. 3020 (2010)........................................................................... 9, 18

McGowan v. Maryland,
366 U.S. 420 (1961)................................................................................................ 16

Mental Disability Law Clinic v. Hogan,
2008 WL 4104460, * 7 (E.D.N.Y. 2008)............................................................. 4, 5

Missouri v. Lewis,
101 U.S. 22 (1879)................................................................................................. 16

Moreno v. N.Y.P.D.,
2011 WL 2748652 (S.D.N.Y. May 17, 2011) ........................................................... 9

Murdock v. Pennsylvania,
319 U.S. 105 (1943)................................................................................................... 7

Nat'l Cong. for Puerto Rican Rights v. City of New York,
75 F.Supp.2d 154 (S.D.N.Y. 1999) .......................................................................... 5

Ne. Ohio Coal. for the Homeless v. City of Cleveland,
105 F.3d 1107 (6th Cir. 1997) ................................................................................... 8

Nnebe v. Daus,
2011 WL 2149924, at *6 (2d Cir. May 31, 2011) ..................................................... 5

Nordlinger v. Hahn,
505 U.S. 1 (1992)....................................................................................................... 7

Nordyke v. King,
644 F.3d 776 (9th Cir. 2011) ....................................................... 7, 11, 12, 13, 14, 15

Osterweil v. Bartlett,
2011 WL 1983340, 10 (N.D.N.Y. May 20, 2011).......................... 12, 15, 17, 18, 19

Paige v. U.S.,
25 A.3d 74 (D.C. 2011) .......................................................................................... 14

People v. Delacy,
192 Cal.App.4th 1481 (Cal. Ct. App. 2011)...................................................... 11, 14

People v. Nivar,
30 Misc.2d 952 (Sup.Ct. Bx. Cty. 2011) ................................................................ 18

People v. Nivar,
915 N.Y.S.2d 801 (Sup.Ct. 2011).............................................................................. 9

People v. Perkins,
62 A.D.3d 1160 (3d Dep't 2009)........................................................................... 7, 9

Peruta v. County of San Diego,
758 F.Supp.2d 1106 (S.D. Cal. 2010)................................................................ 14, 18

Peterson v. LaCabe,
2011 WL 843909, *8 (D. Colo. Mar. 8, 2011) .................................................. 14, 18

Ragin v. Harry Macklowe Real Est. Co.,
6 F.3d 898 (2d Cir. 1993)........................................................................................ 5

Raines v. Byrd,
521 U.S. 811 (1997)................................................................................................. 4

Reeder v. Kansas City Bd. of Police Com'rs,
796 F.2d 1050 (8th Cir. 1986) ............................................................................... 16

Salem Inn, Inc. v. Frank,
381 F.Supp. 859 (E.D.N.Y. 1974) ......................................................................... 17

Salsburg v. Maryland.,
346 U.S. 545 (1954)............................................................................................... 16

Sierra Club v. Morton,
405 U.S. 727 (1972)................................................................................................. 5

Simon v. Eastern Ky. Welfare Rights Organization,
426 U.S. 26 (1976)................................................................................................... 4

Small v. Gen. Nutrition Cos.,
388 F.Supp.2d 83 (E.D.N.Y. 2005) ......................................................................... 5

Stonewall Union v. City of Columbus,
931 F.2d 1130 (6th Cir. 1991) ............................................................................. 7, 8

Timmons v. Twin Cities Area New Party,
520 U.S. 351 (1997)............................................................................................... 17

U.S. v. Chester,
628 F.3d 673 (4th Cir. 2010) ................................................................................. 16

U.S. v. Marzzarella,
614 F.3d 85 (3d Cir. 2010)................................................................. 11, 13, 15, 19

U.S. v. Reese,
627 F.3d 792 (10th Cir. 2010) cert. den'd, 131 S.Ct. 2476 (2011) .......................... 16

United States v. O'Brien,
391 U.S. 367 (1968)............................................................................................... 10

Valley Forge Christ. Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464 (1982) ........................................................................................... 4

Vill. of Arlington Heights v. Met. Hous. Dev. Corp., 429 U.S. 252 (1977) ............................................................................................... 4

## United States Constitution

Article III .................................................................................................................. 3, 4
First Amendment ................................................................................................. passim
Second Amendment ............................................................................................. passim
Fourteenth Amendment ............................................................................................. 19

## Federal Statutes

42 U.S.C § 1983 ........................................................................................................... 5

## State Statutes

New York Penal Code § 400.00(2)(f) ........................................................................... 6
New York Penal Code § 400.00(14) ..................................................................... passim

## Preliminary Statement

As declared by the Supreme Court, the Second Amendment protects an individual's right to posses a gun in the home for self-defense. This right is not absolute or unlimited, is subject to regulation and may be denied to whole classes of persons such as felons and the mentally ill. Since the Supreme Court's holdings, the lower courts have grappled with the scope of the right and the analytic framework for Second Amendment challenges. It has become clear that laws which regulate but do not prohibit protected conduct are subject to a standard of review greater than "rational basis" but less than "strict scrutiny." Even laws which touch upon or burden the "core" Second Amendment right, but do not prohibit the protected conduct, are subject to "intermediate scrutiny." Equal protection challenges related to Second Amendment rights have been subject to "rational basis" review.

Plaintiffs do not dispute that New York State may require a license to possess a handgun in the home and may charge a fee in connection with that license. Instead, they argue that by enacting a statute which permits New York City (and Nassau County) to set a non-nominal fee for a gun license, New York Penal Code § 400.00(14), the State violates Plaintiffs' equal protection rights because the New York City Council, exercising the discretion allowed by the State statute, has legislated that City licensees pay a substantially higher license fee than citizens in the rest of the State. Plaintiffs argue that only a nominal fee can be charged for a premises gun license, that § 400.00(14) should be deemed unconstitutional because it was enacted for an improper purpose, and argue for a strict scrutiny standard based on their assertion that a non-nominal license fee in New York City substantially and impermissibly burdens the exercise of their constitutional rights.

Intervenor Attorney General Eric T. Schneiderman submits this reply memorandum in

further support of his cross-motion for summary judgment. Plaintiffs have failed to establish that

their equal protection challenge to the Penal Law is justiciable. Plaintiffs incorrectly assert that

only nominal fees are permitted for licenses which impact constitutionally protected conduct.

They have failed to establish that Penal Law § 400.00(14) was enacted for an unconstitutional

purpose. Finally, Plaintiffs' equal protection claim fails because Plaintiffs have not shown that in

permitting New York City to set its own license fees, the challenged statute has jeopardized or

severely burdened their constitutional rights.

## POINT I

### PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE.

### A.    Plaintiffs' Equal Protection Claim is Not Justiciable Because There is No "Live Case or Controversy" As Against Penal Law § 400.00(14).

Plaintiffs repeatedly assert in their Reply that they are challenging the $340 fee charged

by the City to possess and own a handgun in one's home. See Plaintiffs' Reply Memorandum in

Support of Summary Judgment and Opposition to the City and State's Cross-Motions ("Pls.

Reply Mem.") at pp. 2-3 ("this lawsuit does not challenge *anything* except for the $340 license

fee")(emphasis in original); see also pp. 1, 6. Because the City Council sets the fee, exercising its

discretion under Penal Law § 400.00(14), and the Penal Law does not in itself impose any injury

upon the Plaintiffs, there is no "live case or controversy" as against the Penal Law.[1]

---

[1]    Plaintiffs appear to acknowledge that states may charge a nominal fee even for premises
licenses, and that the City could charge such a nominal fee not limited to $10 but presumably
lower than $340. Pls. Reply Mem. 23; Complaint ¶¶ 1, 8, 58, Wherefore Cl. iv. If Plaintiffs
agree that the City may charge a fee exceeding $10, they necessarily concede that their grievance
cannot be with the State statute but is with the amount of the fee set by the City. Although the
statute does not itself cap the fees the City may charge, Plaintiffs apparently urge that the
permissible amount of this fee is limited by State common law. See State Mem., Point III(A).

Plaintiffs' efforts to distinguish the cases relied upon by the Attorney General in the Intervenor's Memorandum of Law In Support of Cross-Motion For Summary Judgment ("State Mem.") are ill-founded. For example, Plaintiffs contend that the State's reliance on Florida East Coast Railway v. Martinez, 761 F.Supp. 782, 783, 785 (M.D. Fla. 1991) "is misplaced because that case concerned the issue of whether the [state defendants] were... *proper defendants* in the dispute." Pls. Reply Mem. p. 7 (emphasis in original). Contrary to Plaintiffs' assertion, the state defendants in East Coast Railway moved to dismiss on the grounds that "the Court lacks federal question jurisdiction since the plaintiff has failed to allege any controversy between plaintiff and [the state] defendants," the court concluded "there is no case or controversy present between the plaintiff and the [state defendants]" and directed the plaintiff to direct its "attack" to the locality that enacted the actual ordinance complained of, rather than the enabling legislation. In other words, the court found the state defendants were not proper parties because there was no case or controversy as against the state legislation which enabled the complained of conduct. Id. at 783. See also Harris v. Bush, 106 F.Supp. 2d 1272, 1277 (N.D. Fla. 2000)(No Article III controversy existed where the governor was not responsible for the conduct plaintiff challenged). Plaintiffs here complain of a fee the State neither sets nor collects. Thus there is not a live case or controversy as regards Penal Law § 400.00(14).

**B.     Plaintiffs Lack Standing to Pursue Their Claims.**

Plaintiffs Second Amendment Foundation, Inc. ("SAF") and the New York State Rifle & Pistol Association, Inc. ("NYSRPA") have failed to establish that they have standing here.

### 1.     The Standing Requirements of Article III Cannot Be "Waived" by Plaintiffs.

Plaintiffs' novel assertion that this Court need not address standing is entirely baseless. Standing is a threshold jurisdictional matter which must be resolved before a court reaches the

merits of a case. Raines v. Byrd, 521 U.S. 811, 820 (1997).

SAF and NYSRPA then argue that they need not establish standing because the individual Plaintiffs have standing. Pls. Reply Mem. p .8. Reduced to its minimum, Plaintiffs' argument is that if one plaintiff has standing for one claim, then all plaintiffs have standing for all claims. They rely upon Vill. of Arlington Heights v. Met. Hous. Dev. Corp., 429 U.S. 252, 263-64 (1977) in which various plaintiffs, including a non-profit organization, alleged that their plan to develop an integrated housing development was thwarted by the local government's race-based zoning decision. The Supreme Court considered standing, which apparently had not been litigated in the lower courts, and noted it could reach the constitutional question in that case because at least one plaintiff had standing, and held that the plaintiffs had not carried their burden of establishing the Village's discriminatory intent. Id. at 255. Arlington thus does not stand for the proposition that multiple plaintiffs can bootstrap their claims and establish federal jurisdiction if they can identify one plaintiff who has standing for one claim.

As the Supreme Court recognized in Valley Forge Christ. Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 475-476 (1982):

> We need not mince words when we say that the concept of "Art. III standing" has not been defined with complete consistency in all of the various cases decided by this Court which have discussed it, nor when we say that this very fact is probably proof that the concept cannot be reduced to a one-sentence or one-paragraph definition. But of one thing we may be sure: Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States.

(emphasis added). There is no jurisdiction to hear claims of plaintiffs who lack standing. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); Lewis v. Casey, 518 U.S. 343, 358 (1996) (Reversing where only two of twenty-two plaintiffs seeking injunctive and declaratory relief had standing and noting that "standing is not dispensed in gross"); Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 39-40 (1976); Mental Disability Law Clinic v. Hogan, 2008

WL 4104460, * 7 (E.D.N.Y. 2008) ("each plaintiff must establish the necessary elements with respect to each claim it asserts on its own behalf or on behalf of others"). Thus, this Court must assess the standing of each organizational Plaintiffs for each claim asserted. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 235 (1990).

## 2.    SAF and NYSRPA Lack Both Organizational and Representational Standing.

As an initial matter, SAF and NYSRPA failed to address, and assumedly concede, that they cannot assert 42 U.S.C § 1983 claims on behalf of others. Nnebe v. Daus, 2011 WL 2149924, at *6 (2d Cir. May 31, 2011); League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors, 737 F.2d 155, 160 (2d Cir.1984). Thus the remaining standing issue is whether the organizations can assert their own constitutional claims.

When an organization asserts standing on its own behalf, it must establish a "concrete injury" to itself and its abstract concerns or interest in a subject cannot suffice. Sierra Club v. Morton, 405 U.S. 727, 739 (1972); Simon, 426 U.S. at 40; Small v. Gen. Nutrition Cos., 388 F.Supp.2d 83, 94 (E.D.N.Y. 2005); Nat'l Cong. for Puerto Rican Rights v. City of New York, 75 F.Supp.2d 154, 164 (S.D.N.Y. 1999). SAF and NYSRPA have each provided almost identical supplemental affidavits which establish that at unstated times, unstated members have complained or inquired about licensing fees in New York City and that they have expended unspecified resources responding to these complaints. SAF and NYSRPA have failed to establish the requisite injury to have standing to challenge § 400.00(14). (Although NYSRPA claims that its website addresses licensing fees in the City and efforts to lower those fees, a visit to its site, www.nysrpa.org, on September 23, 2011 failed to identify any such materials).[2]

_____

[2]  Plaintiffs' reliance upon two Fair Housing Act cases, Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982) and Ragin v. Harry Macklowe Real Est. Co., 6 F.3d 898, 904 (2d Cir.

Even if the foregoing were not dispositive of organizational standing in this case, a recent decision by a Southern District judge in a Second Amendment challenge confirms that these organizations lack standing. In Kachalsky v. Cacace, 2011 WL 3962550, 11 (S.D.N.Y. 2011)(Seibel, J.), the court dismissed a constitutional challenge to the "proper cause" requirement embodied in Penal Law § 400.00(2)(f). The court held that plaintiff SAF (NYSRPA was not a party in that action), lacked standing to pursue claims on its own behalf because it had failed to establish an injury to itself. Id. at *11. SAF and NYSRPA should fare no better here.

## POINT II

## PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS.

In its motion for summary judgment, the State demonstrated that it was entitled to judgment on Plaintiffs' equal protection claim because Penal Law § 400.00(14) is a permissible regulation which does not unconstitutionally burden Plaintiffs' constitutional rights. Plaintiffs' argument in reply, that § 400.00(14) severely impacts or jeopardizes their Second Amendment rights, rests upon two faulty assertions: that licensing fees touching upon constitutional rights may only be nominal and that the law here is subject to challenge because of an alleged illicit legislative purpose. They also fail to show that they are similarly situated to citizens in other parts of the State. As set forth below, Plaintiffs' equal protection claim fails.

---

1993), is unavailing. In Havens, the court held that the organization would ultimately have to make an evidentiary showing of an actual impairment to its ability to provide services as a result of the challenged conduct. And in Ragin, the organization established a specific injury it suffered which was traceable directly to the challenged conduct. 6 F.3d at 904. Here, by contrast, SAF and NYSRPA have failed to identify any injury suffered by the organizations as a result of Penal Law § 400.00(14) and thus lack standing.

6

A.    **Plaintiffs Are Wrong When They Argue That a Gun License Fee May Only Be Nominal.**

Equal Protection analysis is usually triggered when legislation either targets a suspect class or impermissibly burdens a fundamental right. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Here, Plaintiffs are not members of a suspect class. Therefore, their equal protection claim rests upon the assertion that the State statute burdens a fundamental right. But contrary to Plaintiffs' arguments, merely implicating or touching upon a right will not cause a challenged law to be subject to heightened scrutiny. Instead, the challenged legislation must "jeopardize" or otherwise severely burden the fundamental right. Nordlinger v. Hahn, 505 ~~U.S. 1, 10 (1992), Nordyke v. King, 644 F.3d 776, 783 (9th Cir. 2011), People v. Perkins, 62~~ A.D.3d 1160, 1161 (3d Dep't 2009).

Plaintiffs rely upon Murdock v. Pennsylvania, 319 U.S. 105, 113-14 (1943) but have failed to rebut the State's showing that Murdock does not stand for the proposition that license fees in this context must be nominal. For example, in Stonewall Union v. City of Columbus, 931 F.2d 1130, 1131 (6th Cir. 1991), plaintiffs challenged the constitutionality of municipal provision which required parade permit applicants to pay an $85 processing fee and costs for traffic control. Id. at 1132. The Sixth Circuit upheld the fee, applying the rule from Cox v. New Hampshire, 312 U.S. 569 (1941) that "as long as the fee was designed to meet the expenses incident to the administration of the law and the cost of maintaining public order for the parade, such a charge did not impermissibly burden First Amendment rights." Stonewall Union, 931 F.2d at 1133 (citing Cox, 312 U.S. at 576-77).[3]   The Court in Stonewall rejected Murdock's use

---

[3] Plaintiffs contend that "Cox stands only for the (much broader) proposition that a fee assessed for using public streets and venues for protected conduct can seek to recover attendant costs." Pls. Reply Mem. at 18.   In fact, as stated in Stonewall Union, Cox explicitly rejected any requirement that fees be nominal and held that in the First Amendment context presented there,

of the word "nominal" and found $757.50 "user fees" were constitutional because they were "reasonably related" to city's interests. Stonewall Union, 731 F.2d at 1136.

The Supreme Court has recognized that even in the context of the fundamental right to free speech, public safety concerns may justify the imposition of a large fee even on protected activities. For example, in Cox , supra, the Court held that "[c]ivil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses." 312 U.S at 574. Many cases have affirmed that even in the First Amendment context, fees need not be limited to nominal amounts and relatively large licensing fees have been upheld. See, e.g., 729, Inc. v. Kenton Cnty. Fiscal Court, 402 Fed. Appx. 131, 133-134 (6th Cir. 2010); Mastrovincenzo v. City of New York, 435 F.3d 78, 83, 100 (2d Cir. 2006) Ne. Ohio Coal. for the Homeless v. City of Cleveland, 105 F.3d 1107, 1108, 1110 (6th Cir. 1997); Gannett Satellite Info. Network, Inc. v. Metro. Transp. Auth., 745 F.2d 767, 774-75 (2d Cir. 1984).[4]

Faced with voluminous First Amendment jurisprudence which clearly permits more than nominal fees even for the exercise of a First Amendment right, Plaintiffs argue that those cases are distinguishable because there the government conferred a "benefit" in exchange for the licensing fee. See Pls. Reply Mem. at pp. 19-20. Without citation, they argue that a "State or local government can charge for a benefit that it makes available" but cannot otherwise charge a

---

fees of up to $300 could be constitutionally permissible. Cox, 312 U.S. at 576-77.

[4] Plaintiffs' attempts to distinguish some (but not all) of these cases is unavailing. See Pls. Reply Mem. pp. 19-21. For example, Plaintiffs allege that Mastrovincenzo "in no way stands for upholding $200 annual licensing fees". But in that case, the court found that although the sale of painted clothing was First Amendment-protected conduct, the City's requirement that the plaintiffs obtain a vendor's license, despite a wait list for the license and $200 yearly fee, was only subject to intermediate scrutiny and survived such scrutiny. 435 F.3d at 83, 100.

fee in connection with the exercise of a constitutional right. Id. But this argument misapprehends federal law and assumes that Plaintiffs have an absolute right to possess a handgun in their homes free of any regulation, which is of course not consistent with Heller's admonitions about the limited nature of the right. District of Columbia v. Heller, 554 U.S. 570, 594, 626 (2008); McDonald v. City of Chicago, Ill., _U.S._, 130 S.Ct. 3020, 3047 (2010).

Heller does not constrain the rights of the states to reasonably regulate the possession of handguns through registration and licensing requirements. Heller v. District of Columbia ("Heller II"), 698 F.Supp.2d 179,189-190 (D.D.C. 2010), citing Heller, 128 S.Ct. at 2822 ("Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home"); see also Justice v. Town of Cicero, 577 F.3d 768, 774 (7th Cir. 2009), cert. den'd, 130 S.Ct. 3410 (2010); Moreno v. N.Y.P.D., 2011 WL 2748652, 3 (S.D.N.Y. May 17, 2011); Perkins, 62 A.D.3d at 1161; People v. Nivar, 915 N.Y.S.2d 801, 805-06 (Sup.Ct. 2011). Here, the licensing fee ameliorates the costs associated with issuing a license and the licensing requirement in itself is legislation designed to help maintain public order. Certainly, the exercise of the Second Amendment right invokes certain public safety concerns not present in the First Amendment context, as the Supreme Court implicitly recognized by stating that felons and the mentally ill could be banned from exercising such right. And yet even in the First Amendment context, much more significant and substantial license fees have been upheld.

Thus, Plaintiffs' argument that § 400.00(14) jeopardizes or severely burdens their Second Amendment rights by permitting the City to charge non-nominal fees fails.

## B. Plaintiffs' Speculation About Improper Legislative Intent Cannot Serve as a Basis to Strike Penal Law § 400.00(14).

Seeking to bolster their equal protection argument, Plaintiffs again argue that Penal

9

Law § 400.00(14) should be stricken because of an alleged unlawful intent by some legislators, citing to one comment made by one legislator in a letter in which he set forth his reasons for sponsoring the bill, that in addition to permitting the police to perform the proper licensing background check and ameliorating the high cost of the same which the City could not afford, the measure might have a collateral effect of the issuance of fewer gun licenses. See Pls. Reply Mem. pp. 4, 24, 25. This argument is without merit.

As the Supreme Court recognized in United States v. O'Brien, 391 U.S. 367, 384 (1968), inquiries into legislative intent cannot be used as a means of striking an otherwise lawful enactment. In O'Brien, the Court was faced with a First Amendment challenge to a law which prohibited the burning of selective service registration certificates. Plaintiffs alleged that the purpose of the law was to suppress their protest speech. The Court held:

> Inquiries into congressional motives or purposes are a hazardous matter. When the issue is simply the interpretation of legislation, the Court will look to statements by legislators for guidance as to the purpose of the legislature...because the benefit to sound decision-making in this circumstance is thought sufficient to risk the possibility of misreading Congress' purpose. It is entirely a different matter when we are asked to void a statute that is, under well-settled criteria, constitutional on its face, on the basis of what fewer than a handful of Congressmen said about it. What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork. We decline to void essentially on the ground that it is unwise legislation which Congress had the undoubted power to enact and which could be reenacted in its exact form if the same or another legislator made a 'wiser' speech about it.

O'Brien, 391 U.S. at 384. See also Nordyke, 664 F.3d at 792; In re G. & A. Books, Inc., 770 F.2d 288, 297 (2d Cir. 1985). Plaintiffs' reliance upon CFCU Comm. Credit Union v. Hayward, 552 F.3d 253, 263 (2d Cir. 2009) is misplaced. In CFCU, the court did not speculate about legislative intent in order to invalidate an otherwise lawful statute but instead was specifically called upon to determine legislative intent to assess whether a law was intended to be retroactive.

In Nordyke, a case directly on point, plaintiffs alleged that a county ordinance banning guns on county property was ostensibly passed for public safety purposes but should be invalidated because its sponsor had repeatedly stated that her true purpose was to "get rid of gun shows on County property". 644 F.3d at 780. The Ninth Circuit held that the statements of the sponsor "do not necessarily bear any relation to the aims and interests of the county legislature as a whole" and rejected the plaintiffs' effort to invalidate the county ordinance on that basis. Id., at 792. Here, Plaintiffs' speculation as to Legislative motives are not a basis to strike § 400.00(14).

## C.   Plaintiffs Have Failed to Identify Any Authority For the Application of Strict Scrutiny to Their Equal Protection Claim.

Plaintiffs continue to assert that strict scrutiny should apply in their equal protection challenge but despite spending almost five pages in their memorandum discussing the numerous cases relied upon by the State, failed to identify a single case that supports their argument. See Pls. Reply Mem. pp 24-29. Instead, Plaintiffs resort to arguing that none of the State's cases establish the categorical application of intermediate scrutiny to all Second Amendment or equal protection challenges. This is true. Many but not all post-Heller Second Amendment decisions hold that the level of scrutiny applied, or whether any level of scrutiny analysis is performed, is based upon whether the challenged law substantially burdens the exercise of the "core" Second Amendment right. In some instances, courts have found that the right is not implicated and ended the analysis. See, e.g., Kachalsky, 2011 WL 3962550 at *20; Heller II, 698 F.Supp.2d at185–86; U.S. v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010). At least one court has applied a "substantial burden" test. Nordyke, 644 F.3d at 785. In others, courts have applied rational basis tests to equal protection challenges involving the Second Amendment. Nordyke, 644 F.3d at 794; People v. Delacy, 192 Cal.App.4th 1481, 1496 (Cal. Ct. App. 2011).

But as was clearly established in the State's motion, courts have almost uniformly applied intermediate scrutiny, even where the core Second Amendment right is implicated. Despite Plaintiffs' tortured interpretations of some of the cases cited by the State, these cases demonstrate that even if § 400.00(14) did substantially burden Plaintiffs' Second Amendment right, which it does not, intermediate scrutiny, at best, and not strict scrutiny, applies. This is consistent with the recent decision in Kachalsky in which the Court found that, in accordance with the almost uniform conclusion of courts addressing post-Heller challenges, even if the core Second Amendment right is implicated, intermediate scrutiny and not strict scrutiny is applicable. Kachalsky, 2011 WL 3962550 at *25.

Plaintiffs' attempt to distinguish Osterweil v. Bartlett, 2011 WL 1983340, 10 (N.D.N.Y. May 20, 2011) is unavailing. In Osterweil, the court affirmed the constitutionality of a Penal Law provision which permits only residents of New York to obtain premises permits, even though the plaintiff in that case had a second home in New York. Id. The Osterweil court joined the majority of courts in applying intermediate scrutiny and rejected strict scrutiny, reasoning that the application of strict scrutiny is "implicitly inconsistent" with Heller's list of presumptively lawful measures restricting the exercise of Second Amendment rights. Id.

Plaintiffs chide the State for citing to the Nordyke case, despites its rejection of strict scrutiny. In Nordyke, the Ninth Circuit applied a "substantial burden" test to plaintiffs' Second Amendment claim and found that a ban on gun shows on county property did not substantially burden plaintiffs' rights. In so holding, the Court noted that

> [A] law does not substantially burden a constitutional right simply because it makes the right more expensive or more difficult to exercise. *See Carhart,* 550 U.S. at 157–58, 127 S.Ct. 1610 ("'The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it.'" (quoting *Casey,* 505 U.S. at 874, 112 S.Ct. 2791)); *Zablocki,* 434 U.S. at 387 n. 12, 98 S.Ct. 673 (noting that a law

12

> reducing the federal benefits of a couple by twenty dollars on account of their
> marriage did not "substantial[ly] ... interfere[ ] with the freedom to marry,"
> because it was unlikely to "significantly discourage[ ]" any marriage). Thus,
> regulations of gun sales do not substantially burden Second Amendment
> rights merely because they make it more difficult to obtain a gun.

Nordyke, 644 F.3d at 788.  Applying such a substantial burden test here would not invalidate the

challenged statute. [5]

In urging this Court to apply strict scrutiny, Plaintiffs fail to cite to a single case where

strict scrutiny has been applied and misconstrue various cases.[6]  For example, Plaintiffs cite to

Ezell v.  City of Chicago, 2011 WL 2623511 (7th Cir. July 6, 2011). But Ezell undercuts

Plaintiffs' arguments. The Ezell plaintiffs challenged a law passed by the City of Chicago just

~~days after the Supreme Court's decision in McDonald~~ that struck down Chicago's handgun ban.

The new law required that Chicago residents obtain a certification of training at a gun range prior

to obtaining a gun license but then banned gun ranges, effecting "a complete ban on gun

ownership within City limits". Ezell, at *20, 24 (Rovner, J. concurring). The Court found that the

challenged law "prohibited" protected conduct and burdened the "core" component of the Second

Amendment right yet declined to apply strict scrutiny. By contrast, § 400.00(14) does not act as

---

[5]  Plaintiffs' interpretations of these and other cases are strained and sometimes inaccurate.  For
example, Plaintiffs argue that that in U.S. v. Marzzarella, 614 F.3d at 88, the Third Circuit
applied intermediate scrutiny because the challenged law did not substantially burden the core
Second Amendment right.  But Marzarella was convicted of possessing a handgun with an
obliterated serial number *in his home*.  The Court actually held that it was not clear that the
statute, which did not ban handguns, implicated Marzzarella's Second Amendment right but even
if it did, it appeared that intermediate scrutiny would apply. Id. at 95.

[6]  Plaintiffs again rely upon Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S.
173 (1979). Plaintiffs' reliance is indefensible in this context.  As set forth at length in the State's
moving memorandum, the holding of Illinois upon which they rely has been largely abandoned.

a prohibition and does not even set the fee to which Plaintiffs object. As the Seventh Circuit noted in Ezell, a lower level of scrutiny applies where a challenged law merely regulates but does not prohibit protected conduct or is not a "severe" burden on the Second Amendment right. Ezell, at *17. Thus even under Ezell, intermediate scrutiny at best would apply in this case.

Other post-Heller courts have applied intermediate scrutiny where the "core" Second Amendment right is implicated and have consistently rejected challenges to licensing and registration schemes. See Heller II, 698 F.Supp.2d at 190; Justice, 577 F.3d at 771. Courts have repeatedly affirmed that the "qualifications for firearms registration are compatible with the core interest protected by the Second Amendment" and localities may take steps to ensure that firearm licensees "are law-abiding, responsible" citizens. See Paige v. U.S., 25 A.3d 74, 94-95 (D.C. 2011); Lowery v. United States, 3 A.3d 1169, 1176 (D.C. 2010).

Because Penal Law § 400.00(14) does not ban or prohibit guns in the home but merely regulates "the manner in which persons may lawfully exercise their Second Amendment rights" it is, at best, is subject to intermediate scrutiny. Peterson v. LaCabe, 2011 WL 843909, *8 (D. Colo. Mar. 8, 2011); Peruta v. County of San Diego, 758 F.Supp.2d 1106, 1115 -1116 (S.D. Cal. 2010). See also Heller, 554 U.S. at 626-27; Kachalsky, 2011 WL 3962550, *19. Because § 400.00(14) does not substantially or severely burden Plaintiffs' right, heightened scrutiny should not even apply to this case and arguably rational basis review is applicable to Plaintiffs' equal protection claim. Nordyke, 644 F.3d at 794; Delacy, 192 Cal.App.4th at 1496. Nevertheless, even if the Court treated the challenge to the Penal Law as a Second Amendment challenge and found that heightened review is applicable, at best intermediate scrutiny would apply.

## D.     Plaintiffs' Misapprehend the Application of First Amendment Jurisprudence in the Second Amendment Context.

Plaintiffs argue at length that "the First Amendment supplies the rules and principles of

scrutiny" in Second Amendment cases. Pls. Reply Mem. p. 10. As the Attorney General has demonstrated, that is not the case. State Mem. at 26-29. Furthermore, an analogous argument in prior Second Amendment litigation in this District has been rejected. See, Kachalsky, 2011 WL 3962550, *22 ("Plaintiffs argue that because courts have looked to First Amendment jurisprudence as a guide in developing a standard of analysis for Second Amendment claims, the Court should import the First Amendment principle of prior restraint … I decline to do so. While these cases borrow an *analytical framework*, they do not apply *substantive* First Amendment rules in Second Amendment context".) (emphasis in original). Thus, while First Amendment jurisprudence may supply an analytic framework for Second Amendment challenges, it is not the only means of analysis (the Ninth Circuit recently applied a substantial burden test in Nordyke), and is not directly applicable in the Second Amendment context. Nordyke, 644 F.3d at 784.

Cases relied upon by Plaintiffs do not establish otherwise. In Ezell, First Amendment provided an "analog" or general framework but the court stated that it was "distilling" First Amendment doctrine to extrapolate general principles for analysis of Second Amendment cases. 2011 WL 2623511 at *13,17. Similarly, Osterweil, declined to directly apply First Amendment jurisprudence in the Second Amendment context. 2011 WL 1983340 at *5-11.

In any event, Plaintiffs' reliance upon First Amendment jurisprudence is puzzling since, even were it directly applicable in the Second Amendment context, it would not require the application of strict scrutiny in Second Amendment cases generally or in the case before the Court. See Ezell, at *17 (declining to apply strict scrutiny even though court found the challenged statute burdened the core Second Amendment right); Osterweil, at *8 ("Drawing on First Amendment jurisprudence, several courts have applied intermediate scrutiny in the Second Amendment context. Accordingly, any implication that the Court must apply strict scrutiny, even were it to apply First Amendment jurisprudence is wrong."); Marzarella, 614 F.3d at 96;

15

U.S. v. Chester, 628 F.3d 673, 682 (4th Cir. 2010); U.S. v. Reese, 627 F.3d 792, 801 (10th Cir. 2010) cert. den'd, 131 S.Ct. 2476 (2011).

**E.      Plaintiffs Have Not Shown that City Residents Are Similarly Situated to Other New Yorkers for This Purpose or that Geographic Distinctions in the Law Are Subject to Strict Acrutiny.**

        Plaintiffs ignore the State's showing that citizens in New York City are not similarly situated, for the purposes of the statute here, to citizens in other parts of the State. Instead, Plaintiffs argue that the "carve outs" and exceptions made for New York City's unique position in the State are irrelevant and assert that geographic classifications are automatically subject to strict scrutiny where a constitutional right is implicated. They are mistaken. Even where a right is implicated, territorial uniformity is not a constitutional prerequisite and strict scrutiny is not necessarily applied. See McGowan v. Maryland, 366 U.S. 420, 425 (1961); Salsburg v. Maryland., 346 U.S. 545, 551 (1954); Missouri v. Lewis, 101 U.S. 22, 31 (1879).

        For example in Los Angeles Cnty. Bar Ass'n v. Eu, 979 F.2d 697, 708 (9th Cir.1992), the court declined to apply heightened scrutiny to a law setting the number of judges for Los Angeles County, despite the fact that the rights of access to court and due process were implicated. The court held that the "equal protection clause does not require that states treat all persons within their borders identically" and applied rational basis review to the challenged statute. Id. See Reeder v. Kansas City Bd. of Police Com'rs, 796 F.2d 1050, 1054 (8th Cir. 1986)(noting in First Amendment challenge that even where a constitutional right is implicated, equal protection claim based on geographic distinction may be subject to rational basis review).

        In fact, equal protection challenges to laws which impose territorial differences impacting access to court and due process rights have been rejected without strict scrutiny being applied. Manes v. Goldin, 400 F.Supp. 23, 30 (E.D.N.Y. 1975)(affirming increase in court filing fees in New York City only, to permit City to keep abreast of the costs of court administration),

aff'd, 423 U.S. 1068 (1976); Fried v. Danaher, 46 Ill.2d 475 (Ill. 1970)(Fifty dollar jury fee only in some counties was reasonable and did not violate equal protection even thought it touched upon constitutional right to trial by jury and due process), app. dism. 402 U.S. 902 (1971).

Nevertheless, Plaintiffs allege that the Legislature's authority to make geographic distinctions touching upon constitutional rights has been "refuted". Pls. Reply Mem. pp. 34-35. In support of this contention, Plaintiffs again inexplicably cite Illinois State Bd. of Elections. As set forth in the State's moving memorandum (see Point III(B)), Illinois cannot support Plaintiffs' contention because numerous subsequent decisions have unequivocally held that even laws which burden associational and voting rights are not unconstitutional nor necessarily subject to strict scrutiny. See Clingman v. Beaver, 544 U.S. 581, 592 (2005); Timmons v. Twin Cities Area New Party, 520 U.S. 351, 364 (1997); Burdick v. Takushi, 504 U.S. 428, 434 (1992).[7]

## F.   Plaintiffs' Arguments Relating to Gun License Residency Requirements Are Frivolous.

Plaintiffs argue, without citation, that geographic considerations cannot justify "substantial disparate burdens" on constitutional rights. Pls. Reply Mem. pp. 31, 33-34. They try to distinguish the authorities cited by the State which show that even where gun licensing is at issue, geographic distinctions will be subject, at most, to intermediate scrutiny. See Osterweil, at *11; Peterson, at *8-9; Peruta, 758 F.Supp.2d at 1119; Bach v. Pataki, 289 F. Supp.2d 217, 228 (N.D.N.Y. 2003), aff'd 408 F.3d 75 (2d Cir. 2005), cert. denied, 546 U.S. 1174 (2006), overruled on other grounds by McDonald, 130 S.Ct. at 3050.[8]   For example, in Osterweil, the court

---

[7]  Plaintiffs' reliance upon Salem Inn, Inc. v. Frank, 381 F.Supp. 859, 864 (E.D.N.Y. 1974) is misplaced since that law barred protected conduct from various establishments and did not prohibit geographic distinctions in laws relating to the exercise of a constitutional right.

[8]  Plaintiffs mistakenly assert that Bach is of no relevance after the Supreme Court's decision in McDonald. Although Bach's holding that the Second Amendment is not applicable against the

17

rejected the plaintiff's equal protection challenge, finding that in-state and out-of-state residents were not similarly situated. Similarly, in Peterson and in Peruta, the courts found that residents of different parts of a state or different states were not similarly situated for gun licensing purposes. Peterson, 2011 WL 843909, *9; Peruta, 758 F.Supp.2d at 1119-20.

## G.     The Statute Survives Scrutiny.

Plaintiffs assert only one argument in support of their contention that § 400.00(14) cannot withstand scrutiny. Pls. Reply Mem. pp. 31-35. They argue that although there is a public safety interest in gun licensure, the State's interest is not advanced by "the disparate fee structure". As the legislative record shows, however, gun fees were increased, and the City was permitted to set fees more compatible with their actual costs, because the costs of performing a thorough investigation for the large number of license applications was financially untenable. See Declaration of Monica Connell, dated July 28, 2011, Ex. F at 7-13; Ex. H at 36. To the extent that other counties were not so burdened, this differential treatment of the City and its environs, present in so many laws in New York, is a fair legislative judgment. Under intermediate scrutiny, the state's policy need not be perfect, but there must be a reasonable fit between the law and its asserted objective. Osterweil, at 10; Marzzarella, 614 F.3d at 98. Here, permitting the City to set its fees, in comportment with State law which limits those fees to the City's actual expenditures, to provide sufficient funding for the licensing process is clearly reasonably fitted to achieve the State's purpose of ensuring that citizen's rights are respected while the public safety is protected and Plaintiffs have utterly failed to establish otherwise.

_____

states was overruled by McDonald (a fact the State noted in its brief), the propositions for which the State relies upon Bach remains good law. See People v. Nivar, 30 Misc.2d 952, 962 (Sup.Ct. Bx. Cty. 2011) (citing Bach for the proposition that the State has a substantial and legitimate interest . . . in insuring the safety of the general public).

18

## CONCLUSION

For the reasons set forth herein, it is respectfully submitted that this Court should issue

an order: (1) denying Plaintiffs' motion for summary judgment; (2) granting the motion for

summary judgment by Intervenor Attorney General Eric T. Schneiderman; (3) declaring that

New York Penal Law § 400.00(14) does not violate the Second or Fourteenth Amendments; and

(4) granting such other and further relief as the Court deems just, proper and appropriate.

Dated:   New York, New York
         October 4, 2011

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York
Attorney for the State Defendants
By:

MONICA CONNELL
ANTHONY J. TOMARI
Assistant Attorneys General
120 Broadway
New York, New York 10271
(212) 416-8965/553

MONICA CONNELL
ANTHONY J. TOMARI
Assistant Attorneys General
  Of Counsel

19